**James A. BARNHART, Plaintiff,**

v.

**UNITED STATES TREASURY DEPARTMENT, Defendant.**

Court No. 81–3–00328.

United States Court of International Trade.

May 31, 1984.

Leonard M. Fertman, P.C., Leonard M. Fertman, Arthur E. Schwimmer, Los Angeles, Cal., at the hearing, for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City, Saul Davis, Pittsburgh, Pa., for defendant.

FORD, Judge:

The matter before the Court involves a review of an order of the Secretary of the

Treasury revoking plaintiff's customhouse broker's license, No. 3605, issued on July 1, 1964 for the Customs District of Los Angeles. Section 641(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1641(b), and 28 U.S.C. § 1581(g) confer jurisdiction herein.

The pertinent statutory provisions provide as follows:

28 U.S.C. § 1581. **Civil actions against the United States and agencies and officers thereof**

(g) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review—

(1) any decision of the Secretary of the Treasury to deny or revoke a customhouse broker's license under section 641(a) of the Tariff Act of 1930 [19 USCS § 1641(a)]; and

(2) any order of the Secretary of the Treasury to revoke or suspend a customhouse broker's license under section 641(b) of the Tariff Act of 1930 [19 USCS § 1641(b)].

19 U.S.C. § 1641:

\* \* \* \* \* \*

(b) The appropriate officer of the customs may at any time, for good and sufficient reasons, serve notice in writing upon any customhouse broker so licensed to show cause why said license shall not be revoked or suspended, which notice shall be in the form of a statement specifically setting forth the ground of complaint. The appropriate officer of customs shall within ten days thereafter notify the customhouse broker in writing of a hearing to be held before him within five days upon said charges. At such hearing the customhouse broker may be represented by counsel, and all proceedings including the proof of the charges and the answer thereto, shall be presented, with the right of cross-examination to both parties, and a stenographic record of the same shall be made and a copy thereof shall be delivered to the customhouse broker. At the conclusion of such hearing all appropriate officers of customs shall forthwith transmit all papers and the stenographic report of the hearing, which shall constitute the record of the case, to the Secretary of the Treasury for his action. Thereupon the said Secretary of the Treasury shall have the right to revoke or suspend the license of any customhouse broker shown to be incompetent, disreputable, or who has refused to comply with the rules and regulations issued under this section, or who has, with intent to defraud, in any manner willfully and knowingly deceived, misled, or threatened any importer, exporter, claimant, or client or prospective importer, exporter, claimant, or client, by word, circular, letter or by advertisement.

An appeal may be taken by any licensed customhouse broker from any order of the Secretary of the Treasury suspending or revoking a license. Such appeal shall be taken by filing, in the Court of International Trade, within sixty days after the entry of such order, a written petition praying that the order of the Secretary of the Treasury be modified or set aside in whole or in part. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Secretary of the Treasury, or any officer designated by him for that purpose, and thereupon the Secretary of the Treasury shall file in the court the record upon which the order complained of was entered, as provided in section 2112 or Title 28. Upon the filing of such petition such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part. No objection to the order of the Secretary of the Treasury shall be considered by the court unless such objection shall have been urged before the appropriate officer of customs or unless there were reasonable grounds for failure to do so. The finding of the Secretary of the Treasury as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceeding before the appropriate officer of

customs, the court may order such additional evidence to be taken before the appropriate officer of customs and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Secretary of the Treasury may modify his findings as to the facts by reason of the additional evidence so taken, and he shall file with the court such modified or new findings, which, if supported by substantial evidence, shall be conclusive, and his recommendation, if any, for the modification or setting aside of the original order. The commencement of proceedings under this subsection shall, unless specifically ordered by the court, operate as a stay of the Secretary of the Treasury's order.

5 U.S.C. § 556:

(d) Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof. Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence. The agency may, to the extent consistent with the interests of justice and the policy of the underlying statutes administered by the agency, consider a violation of section 557(d) of this title [5 USCS § 557(d)] sufficient grounds for a decision adverse to a party who has knowingly committed such violation or knowingly caused such violation to occur. A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. In rule making or determining claims for money or benefits or applications for initial licenses an agency may, when a party will not be prejudiced thereby, adopt procedures for the submission of all or part of the evidence in written form.

5 U.S.C. § 557:

(c) Before a recommended, initial, or tentative decision, or a decision on agency review of the decision of subordinate employees, the parties are entitled to a reasonable opportunity to submit for the consideration of the employees participating in the decisions—

(1) proposed findings and conclusions; or

(2) exceptions to the decisions or recommended decisions of subordinate employees or to tentative agency decisions; and

(3) supporting reasons for the exceptions or proposed findings or conclusions.

The record shall show the ruling on each finding, conclusion, or exception presented. All decisions, including initial, recommended and tentative decisions, are a part of the record and shall include a statement of—

(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and

(B) the appropriate rule, order, sanction, relief, or denial thereof.

5 U.S.C. § 706:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

19 C.F.R. § 111.70:

Additional submittals.

Upon receipt of the record, the Secretary of the Treasury will afford the parties a reasonable opportunity to make such additional submittals as required by 5 U.S.C. 557(c) and by the circumstances of the case.

Barnhart, the plaintiff in this case, has been in the customs business since 1946 and currently operates a customhouse brokerage firm as a sole proprietorship. In late 1967 or early 1968, one Jack Farrer, a camera importer, became a client of plaintiff. Farrer's importing business ultimately failed, and he became involved in the business of buying and selling typewriters. Plaintiff allowed him the use of a portion of his office space and permitted Farrer to use his customhouse broker's invoices to facilitate these transactions. Plaintiff also purchased some of the machines for use in his own business. He received a small income from Farrer's sales of the typewriters, which he duly reported in his tax returns.

On January 30, 1975, plaintiff was arrested by officers of the Los Angeles Police Department, accompanied by a Customs Special Agent, for allegedly "fencing" stolen office equipment. Barnhart invited the arresting officers to inspect his business premises, and a number of stolen business machines were found and turned over to the police. A subsequent audit of plaintiff's business records, by the Customs Service, failed to establish any connection between the financial records of plaintiff's brokerage firm and the alleged fencing operation.

Plaintiff pleaded not guilty to the criminal charges in state court and, together with Farrer and other co-defendants, went to trial. It was the uncontradicted sworn testimony of Barnhart that he did not know the subject business machines were stolen. [Hearing Officer's Findings of Fact, #6, p. 4.] Nevertheless, on March 22, 1976, a jury returned a verdict of guilty on four counts of receiving stolen merchandise and one count of conspiracy.[1] Plaintiff was fined $1,000.00 plus penalties for each count and placed on five years' probation. This sentence was later reduced from a felony conviction to a misdemeanor, a $500.00 fine plus penalties on each count, and three years' probation. On June 13, 1978, the court terminated plaintiff's probation, set aside his conviction, and dismissed the case against him pursuant to California Penal Code § 1203.4. Plaintiff notified the Customs Service of the disposition of the case on June 20, 1978.

On October 16, 1978, the Customs Service served plaintiff with Notice of Preliminary Proceedings looking to the revocation or suspension of his license. A Notice to Show Cause and Statement of Charges was issued on July 18, 1979, charging plaintiff with being disreputable based on misconduct as evidenced by his convictions. An administrative hearing on the charges was held in Los Angeles on January 22, 1980.

The testimony at the hearing established plaintiff enjoyed an excellent reputation as a customs broker among his peers and business associates in the importing community. There had been no complaints of any nature lodged against plaintiff, either prior or subsequent to his criminal convictions. Those testifying on plaintiff's behalf included two former District Directors of Customs and a former Regional Commis-

---

**1.** The Court notes the record before it indicates the trial judge "did not believe his ears" with respect to the verdict against plaintiff. [RT 106:28 to 107:7.]

sioner of Customs. The hearing officer was serving as the District Director of Customs for the Port of Seattle at the time of the hearing. The above customs officials have long been recognized as individuals of stature, highly regarded in the world of customs. Following the hearing, the parties were afforded the opportunity to file their respective proposed findings, conclusions, and supporting reasons.

On October 29, 1980, the Assistant Secretary of the Treasury forwarded copies of the hearing officer's Findings of Fact, Conclusions of Law, and Recommended Decision to the parties. It was the hearing officer's recommended decision that plaintiff be given a serious reprimand, but that his license not be revoked. The parties were advised they had thirty days within which to file exceptions to the decision. As the recommended decision was generally favorable to plaintiff, he chose not to file exceptions on his own behalf. The Customs Service filed timely exceptions to the decision, urging it be reversed and plaintiff's license be revoked. These exceptions were not served on plaintiff.

On February 3, 1981, the Acting Assistant Secretary of the Treasury issued his decision, ordering plaintiff's customhouse broker's license revoked as of that date. The Secretary determined the misconduct underlying the convictions "related directly to the honesty and integrity of plaintiff as a customhouse broker". Notice of the revocation was published in the Federal Register on March 20, 1981, and in the Customs Bulletin (T.D. 81–54). Plaintiff was notified of the Secretary's decision on March 23, 1981, by letter dated March 16, 1981. Pursuant to this Court's order of March 31, 1981, revocation was stayed pending review.

Foremost among the issues before the Court is the claim arising from the failure of defendant to serve plaintiff with the letter-brief, filed with the Secretary, excepting to the hearing officer's recommended decision. Plaintiff contends the failure to serve the exceptions constitutes a denial of due process and, as such, the decision revoking plaintiff's license should be set aside.

On October 29, 1980, the Assistant Secretary, in accordance with 5 U.S.C. § 557(c), notified plaintiff's counsel and counsel for the Customs Service that each had the opportunity to file exceptions to the hearing officer's determination. Defendant filed exceptions with the Secretary on November 25, 1980, but neither the exceptions statement nor notice thereof was served on plaintiff. On February 3, 1981, the Secretary overruled the hearing officer's recommended decision and revoked plaintiff's license. Notification of such revocation was not received by plaintiff until March 23, 1981, and he did not learn of defendant's filing of exceptions until the following day. A stay of revocation was issued by this Court one week later, on March 31, 1981.

Plaintiff characterizes the failure of defendant to furnish plaintiff with exceptions to the hearing officer's recommended decision as an ex parte communication. The Administrative Procedure Act contains strong condemnation of ex parte communications (5 U.S.C. § 554(d)(1), § 557(d)). Indeed, agencies are empowered to consider ex parte communications sufficient grounds for a decision adverse to the party who knowingly commits such a violation. (5 U.S.C. § 556(d)).

In *Camero v. United States*, 179 Ct.Cl. 520, 375 F.2d 777 (1967), the court held invalid the discharge of a civil service employee where the attorney representing the employing agency had communicated ex parte with the person responsible for making the final agency decision. Plaintiff argues the Secretary's decision revoking plaintiff's license was presumably influenced to some degree by defendant's exceptions, particularly as that decision reversed the recommendation of the hearing officer.

Defendant contends plaintiff has no due process right to receive a copy of defendant's exceptions to the recommended decision. Noting the A.P.A. and the applicable agency regulations do not explicitly require that exceptions taken be furnished to the adverse party, defendant maintains the fil-

ing of exceptions is not the type of ex parte communication prohibited by the A.P.A. or *Camero*. It is defendant's assertion the filing of exceptions is merely a preservation of objections or positions already on the record and constitutes neither participation nor advice in the ultimate decision.

Defendant offers several arguments in support of its position on this issue. Citing 19 U.S.C. § 1641(b), defendant urges the Court not to address this issue because of plaintiff's failure to raise this objection before the Secretary. Defendant similarly argues plaintiff's failure to request a copy of the exceptions constitutes a waiver of his rights on this issue.

These arguments fail to consider that plaintiff was unaware of exceptions being filed until after the administrative process had ended and the Secretary had rendered his decision. Under 19 U.S.C. § 1641(b), an objection to an order of the Secretary cannot be considered by the Court unless such objection has been urged upon the appropriate officer of customs or *unless there was reasonable grounds for failure to do so*. [Emphasis supplied.] The same provision requires an appeal from the Secretary's order to be taken within sixty days after entry of the order. The Secretary's order was entered on February 3, 1981. Plaintiff did not learn of the order being entered or the exceptions being filed until March 23 and 24, respectively. In view of these facts, admitted by defendant, there are reasonable grounds for the failure to raise this issue at the administrative level, as plaintiff could be under no obligation to respond to or request documents not known by him to exist.

Arguments similar to those made by defendant were rejected in *Ryder v. United States*, 218 Ct.Cl. 289, 585 F.2d 482 (1978). The government there contended plaintiff failed to present to the administrative agency the issue of ex parte adversarial communications with the decisionmaker

and was therefore barred from raising it in court. The Court responded (at 487):

> \* \* \* plaintiff did not raise this issue because he did not know at the time of its existence. \* \* \* Of course plaintiff is not required to raise points (during the administrative process) with factual components of which he was unaware and had no reason to suspect or know.

Accordingly, plaintiff's contention is within the jurisdiction of this Court and plaintiff has not waived the right to raise the issue of defendant's due process violation.

■ Under 5 U.S.C. § 706, the Court must take into account the rule of prejudicial error. This rule states an agency's action will not be overturned if the procedural error complained of was harmless. *Dodson v. National Transportation Safety Board*, 644 F.2d 647, 652 (7th Cir., 1981). The burden to demonstrate prejudicial error is on the party claiming the error was prejudicial. *Dodson, supra*. Defendant maintains an examination of the record in this case fails to show any demonstration of prejudice toward plaintiff.[2]

■ It appears plaintiff's claim on this issue is based upon a demonstration of prejudice. Plaintiff was not apprised of either exceptions being filed or his license revocation until less than ten days remained in the statutory period within which to file this appeal. Indeed, as he believed neither he nor the Customs Service had filed exceptions to the hearing officer's recommended decision, plaintiff did not consider likely a final decision adverse to him. Had the exceptions been served, plaintiff could have sought an opportunity to file a reply on the ground that the "circumstance[s] of the case" required a "reasonable opportunity to make such additional submittals" pursuant to 19 C.F.R. § 111.70. Furthermore, plaintiff bases his claim on a denial of due process rather than a procedural error as characterized by defendant. As such, the burden is on "the beneficiary

---

**2.** Nevertheless, counsel for defendant indicated at the hearing before the Court that its failure to serve plaintiff with exceptions was "inadvertent", and since the inception of this case the

Customs Service has instituted internal procedures to assure such failure does not occur in the future.

of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to" the result. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Given the result in the present case, it seems clear the error complained of contributed to the result.

 *Black's Law Dictionary* 449 (5th ed.1979) makes the following comment: "The essential elements of 'due process of law' are notice and opportunity to be heard and to defend in [an] orderly proceeding adapted to [the] nature of [the] case, and the guarantee of due process requires that every man have [the] protection of [a] day in court and [the] benefit of general law." The opportunity to defend must be given at a time when it can be effective. *Poe v. Charlotte Memorial Hospital*, 374 F.Supp. 1302 (1974). The test is one of fundamental fairness in light of the total circumstances. *Buttny v. Smiley*, 281 F.Supp. 280 (1968). Where a right to be heard exists, due process requires that right be accommodated at a meaningful time and in a meaningful manner. *Union of Concerned Scientists v. Atomic Energy Commission*, 499 F.2d 1069 (1974).

 *Camero* involved an employee whose discharge resulted from an ex parte communication, concerning the merits of the case, between the attorney representing the employing agency and the final decisionmaker. The communication therein was clearly ex parte, and the remedy, re-instatement with back pay, reflected the extraordinary nature of the violation. The case at bar involves a different type of error. The filing of exceptions is not the type of ex parte communication prohibited by due process or *Camero*. It is not the filing of exceptions that constitutes error, but rather the failure to serve the exceptions on the adverse party. This failure effectively excluded plaintiff from the administrative process at a critical stage. Whether the exceptions merely reiterated defendants's position of record is irrelevant. Parties must be afforded notice and an opportunity to be heard throughout the course of an administrative proceeding of this nature. The requirements of due process are not met when one party to the adversarial proceeding is precluded from participation by lack of notice.

Plaintiff raises other issues which need not be addressed by the Court at this time. Accordingly, the order revoking plaintiff's customhouse broker's license is stayed and this matter remanded to the Department of the Treasury for further proceedings consistent with this opinion.