**Robert J. FUSCO, Plaintiff,**

v.

**UNITED STATES TREASURY DEPARTMENT, Defendant.**

**Court No. 87–11–01081.**

United States Court of International Trade.

Sept. 14, 1988.

Galvin, Haroian & Mlawski, Richard Haroian, New York City, for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., Commercial Litigation Branch, U.S. Dept. of Justice, New York City, Michael T. Ambrosino, Washington, D.C., for defendant.

## OPINION

TSOUCALAS, Judge:

Plaintiff filed this action to contest the decision of the Secretary of the Treasury ("Secretary") revoking his customhouse broker's license (No. 5502) pursuant to 19 U.S.C. § 1641 (1982), *amended by* 19 U.S.C. § 1641 (Supp. II 1984). This Court has jurisdiction under 28 U.S.C. § 1581(g)(2). Defendant has moved for judgment upon the agency record in accordance with US-CIT R. 56.1(a).

### Background

On August 16, 1984, the Regional Commissioner of Customs served upon plaintiff a "Notice of Preliminary Proceedings" and a "Proposed Notice to Show Cause and Statement of Charges." This Notice indicated that the United States Customs Service ("Customs") was considering instituting formal proceedings against plaintiff for the purpose of revoking his license to prac-

tice as a customhouse broker. Administrative Record Exhibit 1.[1]

The preliminary proceedings afforded plaintiff the opportunity to show cause why his license should not be revoked and to avoid the institution of formal proceedings. The issue not being resolved in the preliminary stage, Customs instituted formal proceedings on December 2, 1985, by serving upon plaintiff a "Notice to Show Cause and Statement of Charges,"[2] which read as follows:

CHARGE I: Violation of Section 111.-29(a) of the Customs Regulations (19 C.F.R. 111.29[)] which provides in pertinent part that "[f]unds received by broker from a client for payment of duty ... owing to the Government shall be paid to the Government within 30 days from date of receipt or date due, whichever is later."

SPECIFICATION: For Entry No. 524901, you received the sum of $101,-125.94 for duties from Jeri–Jo Knitwear on October 26, 1982, but never turned over such funds to Customs. Therefore, you did not turn over the funds to Customs within 30 days following the date you received payment from the importer.

CHARGE II: Violation of Section 111.36 of the Customs Regulations (19 C.F.R. 111.36(a)[)] which prohibits a broker from entering into any agreement with an unlicensed person to transact Customs business for others "in such manner that the fees or other benefits resulting from the services rendered for others inure to the benefits of the unlicensed person."

SPECIFICATION: On April 30, 1982 and May 5, 1982 Armen Cargo Services, Inc., an unlicensed person, "(Armen)" used entry numbers assigned to you for Entry Nos. 82–753500 and 82–753505. Customs duty and other charges for both entries were billed to the importer, Argenta

USA, Inc. by Armen Cargo Services, Inc. A corporate Power of Attorney (Customs [Form 5291] dated September 8, 1981 which was executed by] Argenta USA, Inc. named "R.J. Fusco/Armen Cargo Services/Jack Nourijanian as agents for Customs transactions. On Entry No. 82–753500 the entry summary was presented to Customs on May 17, 1982 without payment together with a letter on Armen's stationary [sic] indicating the entry was being surrendered without payment because the importer "refused or is unable to pay." You paid the duty to Customs on August 24, 1982 and billed Armen for the duty on this entry.

On Entry No. 82–753505, Armen paid the duty directly on September 23, 1982 and on May 21, 1982 [sic] presented the entry summary to Customs on your Consumption Entry Form CF 7501.

CHARGE III: Violation of Section 111.37 of the Customs Regulations (19 C.F.R. 111.37) which prohibits a broker from permitting his license or his name to be used by or for any unlicensed person, other than his own employees.

SPECIFICATION: The same as set forth under Specification of Charge III.[3]

The charges and specifications set forth herein, jointly and separately [sic], constitute grounds for the revocation of your license to engage in the business of a Customhouse broker.

Sections 554 and 558, Title 5 United States Code, (5 U.S.C. 554, 558) are applicable to the formal proceedings. You will be notified within ten (10) days after service of this notice of the time and place of a hearing on the charge. You have the right to be represented by counsel and you will have the right to cross-examine the witnesses at such hearing. Prior to a hearing on the charges, you may file in duplicate your verified answers to the charges with the Regional

---

1. Hereinafter all references to exhibits in the Administrative Record shall be designated "A.R. Ex. ___."

2. These charges were essentially identical to the charges listed in the Proposed Notice forwarded on August 16, 1984.

3. The Court believes that this specification intended to refer to Charge II.

Commissioner of Customs, New York, New York.

A.R. Ex. 2.

The hearing concerning plaintiff's license revocation was held on January 30, 1986 before Anthony L. Piazza, the hearing officer designated by Customs pursuant to 19 U.S.C. § 1641(b), *amended by* 19 U.S.C. § 1641(d)(2)(B). A.R. Ex. 4. After the hearing, Mr. Piazza recommended revocation of the plaintiff's customhouse broker's license and the Assistant Secretary of the Treasury agreed, thereby revoking plaintiff's license on July 15, 1987. *See* A.R. Ex. 13 at 7; A.R. Ex. 27.

Plaintiff now claims that the hearing before Mr. Piazza was a nullity because it was conducted under section 641 of the Tariff Act of 1930, 19 U.S.C. § 1641(b) (1982), prior to the amendments made by section 212(a) of the Trade and Tariff Act of 1984, 19 U.S.C. § 1641(d) (Supp. II 1984) (hereinafter the "1984 Act"). Insisting that the revocation proceedings were not "instituted" until after the effective date of the 1984 Act, October 30, 1984, plaintiff maintains that the amended version of section 641 should apply to the instant action.[4] Plaintiff argues that revocation proceedings are not "instituted" until the commencement of formal proceedings upon receipt of the "Notice to Show Cause and Statement of Charges." Defendant, on the other hand, asserts that revocation proceedings are instituted upon the commencement of the preliminary proceedings, when the "Proposed Notice to Show Cause and Notice of Preliminary Proceedings" are received.

The significant difference between the pre-amended and the amended statutes is that the amended version of section 641 provides for the revocation hearing to be held before an Administrative Law Judge appointed pursuant to 5 U.S.C. § 3105, whereas the pre-amended section 641 only required an "appropriate customs officer" to conduct the hearing. The plaintiff, therefore, concludes that the Secretary lacked the requisite power to enforce the hearing officer's decision in the absence of the administrative hearing required by statute.

The issue in the instant action is whether the revocation proceedings against plaintiff are deemed "instituted" from the date preliminary proceedings are commenced or from the date formal proceedings are initiated.

Plaintiff also alleges a violation of his due process rights because his request for review of the agency record prior to the hearing was denied by the hearing officer.

### Discussion

■ Section 214(d)(3) of the Trade and Tariff Act of 1984 provides that:

*[a]ny proceeding* for revocation or suspension of a license instituted under section 641 of the Tariff Act of 1930 before the date of the enactment of this Act shall continue and be governed by the law in effect *at the time the proceeding was instituted.*

Pub.L. 98–573, 98 Stat. 2948, 2989 (codified at note to 19 U.S.C. § 1304) (emphasis added). The preliminary proceedings initiated against plaintiff according to 19 C.F.R. § 111.59[5] fit squarely within section 214 of

---

**4.** The 1984 Act specifies that a revocation proceeding is to be "governed by the law in effect at the time the proceeding was *instituted.*" Section 214(d)(3) of the Trade and Tariff Act of 1984 (codified at note to 19 U.S.C. § 1304 (Supp. II 1984)) (emphasis added).

**5.** § 111.59 Preliminary proceedings.

(a) *Opportunity to participate.* Unless the Commissioner, under § 111.57, has determined that the preliminary proceedings shall not be followed, the district director shall advise the broker of his opportunity to participate in preliminary proceedings with an op-

portunity to avoid formal proceedings against his license.

(b) *Notice of preliminary proceedings.* The district director shall serve upon the broker, as set forth in § 111.63, a notice in writing that:

(1) Transmits a copy of the proposed statement of charges;

(2) Informs him that 5 U.S.C. 554 and 558 will be applicable if formal proceedings are necessary;

(3) Invites him to show cause, if he so desires, why the formal proceedings should not be instituted;

the 1984 Act. Section 214 encompasses "*any* proceeding for revocation or suspension of a license"; it does not differentiate between preliminary and formal proceedings. *See* 19 C.F.R. §§ 111.59–.62. If Congress had intended the 1984 amendments to apply only upon the institution of formal proceedings, it would not have used the expansive "any proceedings" terminology. Furthermore, under the regulations a broker *must* be afforded the opportunity to participate in preliminary proceedings to possibly avoid formal proceedings against his license. 19 C.F.R. § 111.59.

Plaintiff asserts the proceedings are not "instituted" until commencement of formal proceedings, when the "Notice to Show Cause" is issued. Plaintiff reasons that the Notice to Show Cause initiates the procedures required to be followed in connection with the hearing, whereas the "Notice of Preliminary Proceedings" accompanied by the "Proposed Notice to Show Cause" triggers no such action. The Court is not persuaded by plaintiff's argument. "Preliminary Proceedings" are, in fact, proceedings within the ambit of section 214 of the 1984 Act; they are commenced under the customs regulation entitled "Preliminary *proceedings*." *Id.* (emphasis added). The applicable law, therefore, is the law in effect at the time the preliminary proceedings are instituted. The Court now turns to the question of whether the revocation decision was supported by the evidence in the record.

> (4) Informs him that he may make submissions and demonstrations of the character contemplated by the cited statutory provisions;
> (5) *Invites any negotiation for settlement of* the complaint or charge that the broker deems it desirable to enter into;
> (6) Advises him of his right to be represented by counsel; and
> (7) Specifies the place where and a reasonable time within which the broker may respond in writing and/or orally.

**6.** 19 C.F.R. §§ 111.29(a), 111.36(a), and 111.37.

**7.** § 111.29 Diligence in correspondence and paying monies.
(a) *Due diligence by broker.* Each broker shall exercise due diligence in making financial settlements, in answering correspondence, and

## Standard of Review

■ The applicable standard for reviewing the Secretary's decision to revoke plaintiff's broker's license is whether the determination is supported by substantial evidence. 19 U.S.C. § 1641(b). Substantial evidence means more than a mere scintilla "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). In the case at bar, the Court concludes that there is substantial evidence in the record to support the Secretary's revocation decision.

Plaintiff was charged with violating three different sections of the Customs regulations.[6] The conduct which led to violation of 19 C.F.R. § 111.29(a)[7] was plaintiff's failure to pay Customs $101,125.94 for Customs duties received from Jeri–Jo Knitwear ("Jeri–Jo"), an importer. Plaintiff admitted receiving checks totalling approximately $356,000.00 from Jeri–Jo to cover charges for several of Jeri–Jo's importations. A.R. Ex. 4 at 64–65. Plaintiff later conceded using a portion of these funds for his own operating expenses and for duty advances on behalf of other clients. A.R. Ex. 4 at 75. Consequently, plaintiff never paid Customs the money forwarded to him by Jeri–Jo for the payment of duties, forcing Jeri–Jo to tender $101,125.94 to customs as well as an additional $4,600.66 in liquidated damages.[8]

■ Plaintiff's only defense to this charge is his claim that brokers are com-

in preparing or assisting in the preparation and filing of documents relating to any matter handled by him as a broker. Funds received by a broker from a client for payment of duty, tax, or other debt or obligation owing to the Government shall be paid to the Government within 30 days from date of receipt or date due, whichever is later.

**8.** Jeri–Jo thereafter commenced an action in the Supreme Court, State of New York, County of New York, against plaintiff for damages and was granted a judgment in the amount of $118,-581.65 for damages and costs, only $13,000.00 of which had been recovered by Jeri–Jo. *See* A.R. Exs. 5, 13.

pelled to advance their own funds for payment of Customs duties on behalf of their clients because duties must be submitted to Customs within ten working days of entry. Plaintiff further contends that the "10–day rule" is unworkable without making such advances. However, defendant introduced testimony at the hearing by another customhouse broker that contradicted both of plaintiff's assertions. A.R. Ex. 4 at 44–47. The broker stated that it is not realistic to advance funds on behalf of an importer, and that he experienced little difficulty operating within the 10–day rule. A.R. Ex. 4 at 43–46. The Court, therefore, finds plaintiff's defenses to be without merit and not an excuse for failing to comply with Customs regulations.

The conduct which led to the violation of 19 C.F.R. §§ 111.36(a) [9] and 111.37 [10] of the Customs regulations was undisputed. *See* A.R. Ex. 9. Plaintiff allowed Armen Cargo Services ("Armen"), an unlicensed broker, to use entry numbers assigned to plaintiff regarding two entries. *Id.* Customs duty and other charges for both entries were billed to the importer of record, Argenta USA, ("Argenta"), by Armen.

■ At the hearing, plaintiff's defense to these charges was that Armen functioned as a freight forwarder, and therefore fell within the exception provided in 19 C.F.R. § 111.36(b). In accordance with 19 C.F.R. § 111.36(b), plaintiff asserts that Armen can receive fees and benefits resulting from services rendered. A.R. Ex. 12 at 7. This exception is valid, however, only if certain conditions are met. One of the conditions requires a broker to transmit directly to the importer a copy of his brokerage charges if they are to be collected by or through a freight forwarder. 19 C.F.R. § 111.36(b)(2). Argenta, however, received notice of the charges on Armen stationery and received a bill directly from Armen, the unlicensed entity. Additionally, the freight forwarder exception merely allows compensation for services; it does not condone the actual practice of Customs business by an unlicensed person. *See* 19 C.F.R. § 111.36(b). Therefore, based on the evidence in the record, the Court concludes the Secretary had sufficient justification to revoke plaintiff's license pursuant to 19 C.F.R. § 111.53.[11]

"An agency's choice of sanction is not to be overturned unless the reviewing court determines it is unwarranted in law ... or without justification in fact." *Kulkin v. Bergland*, 626 F.2d 181, 184 (1st Cir.1980) (quoting *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973)). Based on a thorough review of the record, this Court is of the opinion that there is a basis in fact for the Secretary's decision revoking plaintiff's customhouse broker's license.

### Due Process

■ Plaintiff additionally claims he did not "have an opportunity to prepare to refute the evidence that was in the administrative file prior to the hearing ... [and]

---

**9.** § 111.36 Relations with unlicensed persons.

(a) *Service to others not to benefit unlicensed person.* A broker shall not enter into any agreement with an unlicensed person to transact Customs business for others in such manner that the fees or other benefits resulting from the services rendered for others inure to the benefit of the unlicensed person except as provided in paragraph (b) [freight forwarder exception]
. . . .

**10.** § 111.37 Misuse of license.

A broker shall not permit his license or his name to be used by or for any unlicensed person, other than his own employees authorized to act for him, or by or for any broker whose license is under suspension in the solicitation, promotion or performance of any Customs business or transaction.

**11.** The Secretary's action revoking the plaintiff's customhouse broker's license was taken pursuant to 19 C.F.R. § 111.53, which provides that:

Failure or refusal to comply with the duties, responsibilities, or requirements specified in Subpart C or elsewhere in this part relating to brokers may be deemed grounds for suspension or revocation of the license of a broker. Such duties, responsibilities, or requirements are not to be considered as exclusive. Conduct not within the purview of any specification of this part may be deemed to be conduct warranting the suspension or revocation of a license under the authority of section 641(b), Tariff Act of 1930, as amended (19 U.S.C. 1641(b)).

had no knowledge as to the evidence contained therein which may have had a bearing on the factual findings of this case." *Plaintiff's Response to Defendant's Motion for Judgment Upon the Agency Record* at 24. The Court, however, finds that there was no deprivation of due process.

As annunciated in *Barnhart v. United States Treasury Department*, 7 CIT 295, 303, 588 F.Supp. 1432, 1438 (1984), "due process of law" requires notice and the opportunity to be heard. Additionally, the touchstone is one of fundamental fairness in light of the total circumstances. *Id.* (citing *Buttny v. Smiley*, 281 F.Supp. 280 (D.Colo.1968)). In the present case, plaintiff presented no proof that he was in any way prejudiced by denial of access to the administrative record prior to the hearing. He had sufficient notice and counsel competently presented plaintiff's case before the hearing officer. Plaintiff was also

aware of the charges beforehand and the reasons Customs instituted proceedings against his customhouse broker's license. In light of these circumstances, the Court fails to find a denial of plaintiff's due process rights.

### Conclusion

There being no procedural irregularities in the agency's action, no abuse of discretion, and substantial evidence on the record to support the Secretary of the Treasury's decision, defendant's motion for judgment upon the agency record is granted and judgment entered in favor of the defendant, dismissing this action.