**TECHSNABEXPORT, LTD.,**
**et al., Plaintiffs,**

v.

**The UNITED STATES,**
**et al., Defendants,**

and

**Ad Hoc Committee of Domestic Uranium Producers, et al., Defendant–Intervenors.**

**Court No. 92–04–00248.**

United States Court of International Trade.

May 21, 1992.

Hogan & Hartson, William A. Bradford, Jr., Lewis E. Leibowitz, Steven J. Routh and T. Clark Weymouth, Frank J. Fahrenkopf, Jr., Washington, D.C., of counsel, for plaintiffs Techsnabexport Ltd., NUEXCO Trading Corp. and Globe Nuclear Services and Supply GNSS.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Neil R. Ellis, Jonathan A. Knee and Susan M. Matthews, Washington, D.C., for plaintiffs Ukraine and Republic of Tajikistan.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch; U.S. Dept. of Justice, Civ. Div., Jane E. Meehan and Marc E. Montalbine, David W. Richardson; Attorney–Advisor, Office of the Chief Counsel for Import Admin., Washington, D.C., of counsel, for defendants.

Akin, Gump, Hauer & Feld, Valerie A. Slater and Nicholas D. Giordano, Washington, D.C., for defendant-intervenors.

## OPINION

RESTANI, Judge:

Pursuant to Rule 65(a) of the rules of this court, Ukraine, the Republic of Tajikistan, Techsnabexport Ltd. ("TENEX"),[1] NUEXCO Trading Corporation ("NUEXCO") and Globe Nuclear Services and Supply GNSS ("GNSS") (collectively "plaintiffs"),[2] request the court to grant a preliminary injunction enjoining the Department of Commerce, International Trade Administration ("Commerce"), from continuing its less than fair value ("LTFV") investigation initiated in *Initiation of Antidumping Duty Investigation: Uranium from the Union of Soviet Socialist Republics*, 56 Fed.Reg. 63,711 (Dep't Comm. Dec. 5, 1991), until the court renders final judgment on plaintiffs' request for permanent injunctive relief and declaratory judgment.[3]

Plaintiffs allege that Commerce's March 24, 1992 decision to continue the investigation violates the antidumping law and is

1. On January 27, 1992, Techsnabexport Ltd., a joint stock company registered in the Russian Federation, replaced V/O Techsnabexport, an all-union export sales and marketing organization.

2. Although Energy Fuels Nuclear, Inc. is apparently not a party to this action, it is mentioned as a respondent in TENEX's submissions to Commerce.

3. On May 11, 1992, the court consolidated Court No. 92–04–00243, an action brought by the sovereign plaintiffs with Court No. 92–04–00248, an action brought by the nonsovereign plaintiffs, TENEX, the sole official exporter during the period of investigation, NUEXCO, the sole U.S. importer during the period of investigation and GNSS. On that same date, the court denied a motion to intervene filed by the Russian Federation as untimely.

causing, and will continue to cause, immediate and irreparable injury to plaintiffs. Plaintiffs argue that the antidumping investigation was initiated on the basis of uranium imports from the Union of Soviet Socialist Republics ("USSR") and since that country has ceased to exist, there can be no future imports at LTFV. The essence of the dispute is plaintiffs' contention that Commerce cannot apply the results of its investigation of past imports from one country (the USSR) to future uranium imports from other countries (the twelve constituent republics). Defendant and defendant-intervenors oppose the motions on both substantive and jurisdictional grounds.

### Background

On November 8, 1991, the Ad Hoc Committee of Domestic Uranium Producers and the Oil, Chemical and Atomic Workers International Union ("petitioners") filed a petition with Commerce and the International Trade Commission ("ITC") requesting initiation of an antidumping duty investigation for imports of uranium products from the USSR and "each and every Republic which is ... a member" of the USSR.[4] On December 5, 1991, Commerce published notice in the *Federal Register* that it was initiating an antidumping duty investigation of uranium imports from the USSR. 56 Fed. Reg. 63,711. The period of investigation covered imports of uranium from June 1991 through November 1991.

On November 19, 1991, ITC published notice that it was initiating its preliminary investigation. *Uranium from the USSR*, 56 Fed.Reg. 58,397 (Int'l Trade Comm. Nov. 19, 1991). On December 23, 1991, ITC made a preliminary affirmative injury determination. *Uranium from the USSR*, USITC Pub. 2471, Inv. No. 731–TA–539 (Dec.1991).

During the last several months of 1991, the USSR rapidly moved toward dissolution. Tajikistan declared its independence on September 9, and the Ukraine voted in favor of independence on December 1. The USSR ceased to exist on December 25, 1991. In view of the dissolution of the USSR, counsel for TENEX, NUEXCO and GNSS ("company respondents" or "company plaintiffs") requested on January 10, 1992, that Commerce terminate the investigation. While this matter was pending, Commerce issued questionnaires to the company respondents on January 16 and received the responses on February 21 and 28, and March 13.

During the last weeks of January, Commerce also issued questionnaires to the twelve newly-created republics. These questionnaires were sent to the Deputy Trade Representative of the Russian Federation in Washington, D.C.[5] Commerce stated that it expected that the Deputy Trade Representative would transmit the copies to each of the new republics. Upon the refusal of the Russian Deputy Trade Representative to assume responsibility for proper delivery of the questionnaires to the republics, Commerce sent a copy of the questionnaire to the United Nations Mission of Ukraine.[6] For the other countries, including Tajikistan, it sent copies to the U.S. Embassy in Moscow, to be delivered to the countries' permanent representatives to the Russian Federation.[7]

On March 24, 1992, Commerce issued an internal memorandum that stated its intent to continue the investigation against the independent republics. In this memorandum, Commerce stated that the antidumping law does not require rescission of an investigation when the country named in the petition ceases to exist. Commerce

---

**4.** In their petition, petitioners stated their intent to include each of the individual republics so that if any of the republics withdrew from the USSR, the domestic industry would not be denied relief.

**5.** Commerce submitted these questionnaires to the Russian Embassy under the assumption that the Russian Embassy was acting as liaison with the independent republics.

**6.** The questionnaire letter was dated January 29, 1992. In a letter dated February 3, 1992, Ukraine acknowledged receipt of the questionnaire.

**7.** Tajikistan received a copy of the questionnaire in mid-February through its authorized representative to the Russian Federation.

found no statutory guidance on this specific issue, but noted that termination of the investigation would create a gap in the coverage of the antidumping law between the time of termination and the time petitions were filed against the new countries.

On April 1, 1992, Commerce published notice that it was extending the deadline for the preliminary determination in this matter until May 18, 1992 because the investigation was "extraordinarily complicated." *Postponement of Preliminary Antidumping Duty Determination: Uranium from the Former Union of Soviet Socialist Republics (USSR)*, 57 Fed.Reg. 11,064, 11,065 (Dep't Comm. Apr. 1, 1992). Commerce explained that it had been very difficult to communicate with the new republics. Commerce also restated its intention to continue the investigation.

On March 30, 1992, Commerce mailed the petition, initiation notice, questionnaire, and other memoranda to the governments of the independent republics. The permanent representatives of the independent states in Moscow were also served by hand with most of these documents. The deadline for submitting information was extended to April 15. The sovereign plaintiffs in this action have not responded to the questionnaires.

## Discussion

### 1. This court's jurisdiction under 28 U.S.C. § 1581(i).

◼ Plaintiffs carry the burden of demonstrating that jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Smith Corona Group, SCM Corp. v. United States*, 8 CIT 100, 102, 593 F.Supp. 415, 417–18 (1984). In this case, plaintiffs argue that the court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(4), which sets forth the court's residual jurisdiction.[8] Defendants maintain that plaintiffs have an adequate remedy under 28 U.S.C. § 1581(c).[9] That is, if the investiga-

---

8. 28 U.S.C. § 1581(i) provides as follows:

 (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

 (1) revenue from imports or tonnage;

 (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

 (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

 (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

 28 U.S.C. § 1581(i) (1988).

9. Pursuant to 28 U.S.C. § 1581(c), this court has jurisdiction over all actions commenced under § 516A of the Tariff Act of 1930. Section 516A of the Tariff Act of 1930 as amended, 19 U.S.C. § 1516a provides, in part, as follows:

 **Judicial review in countervailing duty and antidumping duty proceedings** ...

 **(B) Reviewable determinations**

 The determinations which may be contested under subparagraph A are as follows:

 (i) Final affirmative determinations by the administering authority and by the Commis-

sion under section 1671d or 1673d of this title, including any negative part of such a determination (other than a part referred to in clause (ii)).

 (ii) A final negative determination by the administering authority or the Commission under 1671d or 1673d of this title, including, at the option of the appellant, any part of a final affirmative determination which specifically excludes any company or product.

 (iii) A final determination, other than a determination reviewable under paragraph (1), by the administering authority or the Commission under section 1675 of this title.

 (iv) A determination by the administering authority, under section 1671c or 1673c of this title, to suspend an antidumping duty or countervailing duty investigation, including any final determination resulting from a continued investigation which changes the size of the dumping margin or net subsidy calculated, or the reasoning underlying such calculations, at the time the suspension agreement was concluded.

 (v) An injurious effect determination by the Commission under section 1671c(h) or 1673c(h) of this title.

 (vi) A determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order.

 (3) Exception—Notwithstanding the limitation imposed by paragraph (2)(A)(i)(II) of this

tion ultimately results in a final affirmative antidumping duty determination and an antidumping duty order is published, plaintiffs will have an opportunity to contest Commerce's decision to continue the investigation. That decision would be subsumed in the final appealable determination. Plaintiffs respond by arguing that post-investigation judicial review pursuant to 28 U.S.C. § 1581(c) is manifestly inadequate because mere continuation of the investigation will cause irreparable harm whether or not the final determination is adverse.

Section 1581(i)(4) may be invoked as a basis for subject matter jurisdiction when another subsection of § 1581 is unavailable or the remedy provided by the other subsection is "manifestly inadequate." *See National Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1557 (Fed.Cir.1988); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). Such residual jurisdiction is available if Congress has not defined another avenue for judicial review or if Congress has not precluded it entirely. *See Macmillan Bloedel Ltd. v. United States*, 16 CIT ——, ——, 1992 WL 107336 Slip Op. 92–67 at 3–4 (May 8, 1992). Although jurisdiction is limited in cases where the complainant seeks relief during the pendency of an investigation and the determination is finally reviewable under 28 U.S.C. § 1581(c), *see id.* at ——, Slip Op. 92–67 at 4, jurisdiction to review interim decisions has been found when failure to review the interim determination will effectively preclude review. *See id.* at ——, Slip Op. 92–67 at 3–4.

The United States does not seriously dispute that *Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 CIT 584, 717 F.Supp. 847 (1989), *aff'd*, 903 F.2d 1555 (Fed.Cir.1990), and *Carnation Enterprises v. United States Dep't of Commerce*, 13 CIT 604, 719 F.Supp. 1084 (1989), require that the court take jurisdiction. In *Asocoflores*, the court

found jurisdiction under § 1581(i) where plaintiff sought to enjoin Commerce from proceeding with an allegedly unlawful administrative review. Plaintiffs, numerous small businesses, alleged hardship in expending time, effort and money to participate in the review. The court found that the remedy afforded after the final determination (under § 1581(c)) was manifestly inadequate because, by that time, plaintiffs' challenge would be moot. 13 CIT at 586–87, 717 F.Supp. at 850. Significantly, the court noted that Commerce's decision to initiate the review was neither a preliminary decision that would be superseded by a final determination, nor was it a decision related to methodology or procedure that could be reviewed effectively following the final determination. *Id.* at 587, 717 F.Supp. at 850. The reasoning of *Carnation* is not dissimilar. The *Carnation* court found jurisdiction under § 1581(i) because eventual standing under § 1581(c) was speculative and therefore manifestly inadequate. *Carnation*, 13 CIT at 611, 719 F.Supp. at 1090–91.

The United States likens this case to challenges for failure to exclude a party from an investigation. *See e.g., Macmillan Bloedel*, 16 CIT ——, Slip Op. 92–67. A decision to exclude a particular party was one of the ordinary discretionary decisions based on particular fact patterns envisioned by Congress when it enacted 28 U.S.C. § 1581(c). Such decisions ordinarily do not call into question the underlying validity of the entire investigation, as does the case at hand. Section 1581(i)(4) was enacted to ensure judicial review in the Court of International Trade for various situations involving import laws for which Congress expected judicial review, but which were too unique or varied for specific definition. *See American Ass'n of Exporters & Importers v. United States*, 751 F.2d 1239, 1245–46 (Fed.Cir.1985). Decisions not to exclude or not to investigate exclusion requests do not bear these hall-

subsection, a final affirmative determination by the administering authority under section 1671d or 1673d of this title may be contested by commencing an action, in accordance with the provisions of paragraph (2)(A), within

thirty days after the date of publication in the Federal Register of a final negative determination by the Commission under section 1671d or 1673d of this title.

19 U.S.C. § 1516a (1988).

marks, and they are distinguishable from the case at hand.

As the parties apparently recognize, this action is similar to *Carnation* and *Asocoflores* in that plaintiffs challenge the legality of the proceedings, rather than particular determinations within the proceedings, and demand to be relieved of the obligation to participate in proceedings they find statutorily and constitutionally infirm. Furthermore, there is no guarantee that an adverse appealable decision will result from these proceedings. Stare decisis counsels adherence to prior determinations of this court which hold that jurisdiction exists to hear challenges to the validity of antidumping proceedings prior to their completion if the opportunity for full relief may be lost by awaiting the final determination.[10] *See American Lamb Co. v. United States*, 9 CIT 260, 262, 611 F.Supp. 979, 981 (1985) (stare decisis counsels court to follow prior decisions), *remanded* 785 F.2d 994 (1986); *see also Nissan Motor Corp. v. United States*, 10 CIT 820, 822, 651 F.Supp. 1450, 1453 (1986) (§ 1581(i) jurisdiction exists to determine if administrative review may continue; preliminary injunction denied).

 Defendants have also raised the argument that there has not been an exhaustion of administrative remedies. The court has found that under the facts at hand further exhaustion is not required as a statutory prerequisite to § 1581(i) jurisdiction. The remaining question is whether

further exhaustion is required as a discretionary matter. Under the exhaustion of remedies doctrine, "judicial review of administrative action is inappropriate unless and until the person seeking to challenge that action has utilized the prescribed administrative procedures for raising the point." *Sharp Corp. v. United States*, 837 F.2d 1058, 1062 (Fed.Cir.1988). Sovereign plaintiffs contend that exhaustion of administrative remedies is not required in this case because the essence of the harm is *participation* in the investigation; to compel them to participate and appeal only after a final determination would effectively nullify any remedy as to their participation. Company plaintiffs have raised the issue of termination of the investigation with Commerce and are participating in the proceedings.

The statutory provision governing exhaustion in actions commenced under § 1581(i) is 28 U.S.C. § 2637(d), which provides that the court shall require exhaustion of administrative remedies "where appropriate." 28 U.S.C. § 2637(d) (1988).[11] Plaintiffs in this case have established that they fall within an exception to the doctrine. It is well settled that a plaintiff need not exhaust administrative remedies where invoking such remedies would be futile. *Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1575 (Fed.Cir.1990) (citing *Bendure v. United States*, 554 F.2d 427, 431,

---

**10.** Cases such as *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356 (Fed.Cir.1992) and *Conoco Inc. v. United States Foreign–Trade Zones Board*, 16 CIT ——, 790 F.Supp. 279 (1992), cited by the United States, are distinguishable. Those cases involved §§ 1581(h) and 1581(a) jurisdiction respectively. 28 U.S.C. § 1581(h) spells out specific procedures to be followed in the case of pre-importation review, which the *Norcal/Crosetti* court held could not be avoided for reasons of mere inconvenience. *Norcal/Crosetti*, 963 F.2d at 360. In *Conoco*, the court found § 1581(a) was an available avenue of relief. *See* 16 CIT at ——, 790 F.Supp. at ——. To the extent that *Conoco* is applicable and in conflict with such cases as *Nissan Motor Corp. v. United States*, 10 CIT 820, 651 F.Supp. 1450 (1986), *Carnation* and *Asocoflores*, the court will apply the earlier, more specifically applicable, cases. The Court of Appeals has

neither effectively overruled the earlier cases nor declared 28 U.S.C. § 1581(i) moribund. *See e.g., Asociacion Columbiana*, 903 F.2d at 1558 (since preliminary injunction denied, unnecessary to consider government's argument that any judicial review must await final decision); *Sharp Corp. v. United States*, 837 F.2d 1058, 1062 (Fed.Cir.1988) (finding it unnecessary to consider government's contention that judicial review of the methods used in administrative review must await final decision where court refused to grant preliminary injunction based on lack of irreparable injury).

**11.** Specifically, this provision provides:

In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.

28 U.S.C. § 2637(d) (1988).

213 Ct.Cl. 633 (1977)); *accord Rhone Poulenc, S.A. v. United States*, 7 CIT 133, 135, 583 F.Supp. 607, 610 (1984). Any further attempt by plaintiffs to gain from Commerce the desired relief—immediate termination of the investigation—would be futile because this issue was raised and Commerce has decided this issue with finality and is continuing to do the very thing which causes the allegedly irreparable injury. Commerce has already concluded that it will continue its investigation of uranium from the USSR for the purpose of determining liability of imports from the independent republics; the administrative decision-making process regarding this issue has been completed.

In short, the issue of statutory authority to proceed has been resolved by the administrative agency as definitively as is possible. These are not procedural and methodological issues which are yet to be decided in a final form by the agency. No further exhaustion of administrative remedies is required.

### 2. Injunctive relief.

■ In order to grant plaintiffs' request for preliminary relief, the court must balance the following four factors: 1) likelihood of success on the merits; 2) the threat of immediate irreparable harm if the requested relief is denied; 3) the balance of the hardships on the parties; and 4) the public interest in issuing the requested relief. *Matsushita Elec. Industrial Co. v. United States*, 823 F.2d 505, 509 (Fed.Cir. 1987). The court denies preliminary injunctive relief because irreparable harm has not been demonstrated, the balance of hardships does not tip in plaintiffs' favor and it is not in the public interest to grant preliminary relief.

■ The plaintiffs allege irreparable harm based on deprivation of constitutional due process rights. Deprivation of constitutional rights has been found to constitute irreparable harm sufficient to require immediate relief. *See e.g., Bowman v. Township of Pennsauken*, 709 F.Supp. 1329, 1348 (D.N.J.1989) (equal protection and due process violations establish irreparable harm); *Cate v. Oldham*, 707 F.2d 1176, 1188–89 (11th Cir.1983) (violation of First Amendment rights constitutes irreparable injury). In considering the procedural due process issue, the court must first determine whether a protected property or liberty interest exists, and if such an interest exists, then determine what procedures are necessary to protect that interest. *See e.g., American Ass'n of Exporters & Importers v. United States*, 751 F.2d 1239, 1250 (Fed. Cir.1985); *Johnston–Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir.1990).

The Court of Appeals for the Federal Circuit has noted that for an interest to be protected by the Constitution, it must be "some interest worthy of protecting." *American Ass'n of Exporters*, 751 F.2d at 1250. Plaintiffs do not argue that a property right to import merchandise exists. *See The Abby Dodge v. United States*, 223 U.S. 166, 176–77, 32 S.Ct. 310, 312–13, 55 L.Ed. 390 (1912); *Arjay Associates, Inc. v. Bush*, 891 F.2d 894, 896 (Fed.Cir.1989). Instead, company plaintiffs argue that the property interest at stake is their interest in avoiding "damaged business relationships, lost sales and arbitrary antidumping duties." *See* Company Plaintiffs' Brief at 51–52. Sovereign plaintiffs base their argument on the antidumping statute which they claim supports the proposition that "interested parties" in antidumping proceedings have a protected interest in access to the United States market. *See* Sovereign Plaintiffs' Brief at 48, *citing* 19 U.S.C. §§ 1677(9)(A); 1677(9)(B) (1988). Defendants maintain that plaintiffs have no constitutionally protected property interest.

■ In *American Ass'n of Exporters*, the appellate court found that a trade association representing domestic importers and retailers of textile and apparel products had no right to challenge on due process grounds certain actions taken by the government pursuant to international agreements. The court noted that "[t]hose seeking constitutional protection under the due process clause must point to a 'legitimate claim of entitlement' prior to any consideration of the Government's constitutional obligations." 751 F.2d at 1250 (cit-

ing *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974)). The court then found that no statute or international agreement gave the importers a proprietary interest, and the government had not taken any merchandise from the importers. Emphasizing that the government had merely limited the amount which importers could purchase in the future, the court stated that "mere subjective expectation of a future business transaction does not rise to the level of an interest worthy of constitutional protection." *Id.* (citing *Perry v. Sinderman*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972)). Thus, allegations of possible lost business in the future do not form the basis of a property interest warranting protection under the Constitution.

■ Likewise, the "interested party" provision of the antidumping law does not create any interest in or right to access the United States market. *See* 19 U.S.C. §§ 1677(9)(A); 1677(9)(B) (1988). Rather, it defines who may participate in an antidumping investigation, and establishes statutory procedural requirements for the conduct of an antidumping proceeding. It is far from clear that a constitutional property right may be derived from this provision of the antidumping laws.

Several cases in this court, however, have recognized, without detailed explanation of the property interest involved, that due process rights stem from statutes involving imports. *See e.g., Koyo Seiko Co. v. United States*, 16 CIT ——, —— —— ——, 796 F.Supp. 517, 523–24 (1992) (excessive delay by Commerce in completing final determination; implicitly finding due process violation); *PPG Industries v. United States*, 13 CIT 183, 189–90, 708 F.Supp. 1327, 1331–32 (1989) (plaintiff opposed Commerce's motion to supplement administrative record claiming due process violation under Fifth Amendment; remanding and noting "in order for judicial review on the basis of the administrative record to be meaningful under the due process clause

... the creation and maintenance of the record itself must include adherence to the procedures which Congress has set out in the statutes"); *Lois Jeans & Jackets v. United States*, 5 CIT 238, 243, 566 F.Supp. 1523, 1527–28 (1983) (lack of notice and opportunity to comment are so fundamentally prejudicial as to constitute due process violation).

■ Even assuming that plaintiffs could establish the existence of some constitutionally protected property right based upon present business interests or statutory rights, plaintiffs failed to prove the existence of constitutional harm. Procedural due process is not an inflexible, absolute standard. *See Board of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86, 98 S.Ct. 948, 953, 55 L.Ed.2d 124 (1978) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)). As this court has recognized, the essential elements of due process are notice and the opportunity to be heard. *See Barnhart v. United States Treasury Dep't*, 7 CIT 295, 303, 588 F.Supp. 1432, 1438 (1984) (quoting *Black's Law Dictionary* 449 (5th ed. 1979)). "The test is one of fundamental fairness in light of the total circumstances." *Id.* In other words, in calculating the constitutional sufficiency of notice, the court must examine all of the circumstances and make a determination based upon the reasonableness of the notice and participation. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The court finds that the notice and opportunity to be heard and to participate in the proceedings afforded plaintiffs meet constitutional standards.[12]

■ First, if a property right exists, it is not the type of interest which is so vital that the most stringent type of process must be provided. *See Mathews v. Eldridge*, 424 U.S. 319, 341–43, 96 S.Ct. 893, 905–07, 47 L.Ed.2d 18 (1976) (nature of process required depends on degree of deprivation). Second, adequate process was

---

**12.** At this time, the court does not reach the issue of whether the procedures are adequate in statutory terms.

provided. The petition gave notice of intent to reach exports from the republics as well as the USSR, and the proceedings have been sufficiently delayed so that plaintiffs have had adequate notice [13] and opportunity to participate,[14] although the sovereign plaintiffs have thus far rejected that option. Any deprivation of an early opportunity for informal government-to-government consultations, as is alleged by the sovereign plaintiffs, is not a harm sufficient to offend the Constitution.[15] Moreover, Commerce has delayed issuing the preliminary determination, granting plaintiffs the opportunity to participate in the investigation to the fullest extent. Sovereign plaintiffs have chosen to remain silent, refusing to cooperate with Commerce in this matter.

 The sovereign plaintiffs argue further that by continuing this investigation Commerce has placed them in an inferior position which could permanently damage their credibility in the world trading community. This contention is nothing more than a general allegation of harm, lacking even the support of an affidavit. The court may not grant preliminary relief based upon unsupported allegations.

 As proof of irreparable injury, company plaintiffs have submitted affidavits alleging that because of the ongoing proceedings government officials of the independent republics are hesitant to establish long term business relationships with the company plaintiffs because they are afraid of adverse effects on their ability to export their uranium to the United States through the company plaintiffs. Allegations of harm to potential future business relations are too speculative to constitute irreparable harm. Company plaintiffs have not put forth "probative evidence" demonstrating irreparable harm. *See Nat'l Hand Tool Corp. v. United States*, 14 CIT ——, ——, 1990 WL 13550 Slip Op. 90–12 at 11 (Feb. 9, 1990).[16]

As to the balance of hardships, at this point it is impossible to determine if it is plaintiffs or the petitioning domestic industry which is suffering the greater harm. The domestic industry has endured numerous delays in its quest to obtain relief. There seems to be no dispute that it is beleaguered. Rather, plaintiffs allege that the domestic industry is not simply beleaguered but dead and, therefore, logically can suffer no harm. The court has been presented insufficient evidence to resolve this matter. As plaintiffs have the burden on this issue, the hardships are presumed to balance. Even if the court is in error with respect to the issue of irreparable harm based on constitutional deprivation, plaintiffs have demonstrated no hardship which would warrant preliminary relief.

Finally, the court must consider the public interest. The issues of statutory interpretation involved here are extremely complicated and of great importance to all of the parties, sovereign and otherwise. In view of the lack of imminent irreparable harm or demonstrable hardship, it is inappropriate to resolve them in a hurried manner [17] or according to a likelihood of success on the merits standard. They should be definitively resolved as soon as possible.

Accordingly, plaintiffs' motion for preliminary injunctive relief is denied. The parties shall consult on a further briefing schedule. The results of such consultation

---

**13.** The court notes that all plaintiffs had both constructive and actual notice of the investigation. *See supra* nn. 5–7, and accompanying text.

**14.** Several times Commerce extended the deadline for plaintiffs to respond to the questionnaires.

**15.** The sovereign plaintiffs also note the preliminary ITC determination which occurred prior to dissolution of the USSR. How ITC might or could respond to the issue of dissolution or participation of the republics has not been ad-

dressed. Thus, at the present time this would appear an inappropriate basis on which to find constitutional harm.

**16.** Company plaintiffs may not allege constitutional violations based on the rights of third parties.

**17.** At the start of this litigation, Commerce gave May 18, 1992, as the date for issuance of the preliminary determination. The court has been informed that this date has been postponed to May 28, 1992.

shall be reported to the court within ten days of the date of this opinion.