COMPANHIA BRASILEIRA CARBURETO DE CALCIO, PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND AIMCOR, ALABAMA SILICON, INC., AMERICAN ALLOYS, INC., GLOBE METALLURGICAL, INC., AND AMERICAN SILICON TECHNOLOGIES, DEFENDANT-INTERVENORS

Court No. 94–02–00120

(Dated March 18, 1994)

*Law Offices of Royal Daniel, III (Royal Daniel, III* and *Jeri Beth Katz),* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Michael S. Kane), Dean A. Pinkert,* Attorney Advisor, United States Department of Commerce, of counsel, for defendant.
*Baker & Botts (William D. Kramer, Charles M. Darling, IV, Stephen L. Teichler* and *Martin Schaefermeier)* for defendant-intervenors.

---

OPINION

RESTANI, *Judge:* This matter is before the court on the motion of plaintiff Companhia Brasileira Carbureto de Calcio ("CBCC") for a preliminary injunction to prevent the collection of antidumping deposits. The deposits are premised on a United States Department of Commerce ("Commerce") amended final determination, which plaintiff contends is illegal.[1] *See Ferrosilicon from Brazil,* 59 Fed. Reg. 8598 (Dep't Comm. 1994) (amended final determ. of sales at less than fair value ("LTFV")) *("Amended Final Det.").* In essence, CBCC wishes the original final determination reinstated. *See Ferrosilicon from Brazil,* 59 Fed. Reg. 732 (Dep't Comm. 1994) (final determ. of LTFV sales) *("Final Det.").*

JURISDICTION

There is little doubt that a party who is aggrieved by governmental action with respect to unfair trade matters may seek relief in this court, pursuant to 28 U.S.C. § 1581(i) (1988), if more specific remedies would be "manifestly inadequate." *See Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed. Cir. 1987), *cert. denied,* 484 U.S. 1041 (1988); *American Ass'n of Exporters & Importers v. United States,* 751 F.2d 1239, 1246 (Fed. Cir. 1985). Phrased another way, the question is will the procedures specified elsewhere in 28 U.S.C. § 1581 "provide [ ] effective review." *See Conoco, Inc. v. United States Foreign-Trade Zones Board,* No. 92–1396, at 20 (Fed. Cir. Mar. 15, 1994). If remedies ultimately available under 28 U.S.C. § 1581(c) (1988) are rendered useless by particular factual circumstances, such remedies may be manifestly inadequate or ineffective. *Compare Techsnabexport, Ltd. v. United States,* 795 F. Supp. 428, 432–34 (Ct. Int'l Trade 1992) (finding jurisdiction under 28 U.S.C. § 1581(i), where continuation of investigation would cause harm even if final determination was not adverse) and *AOC Int'l v. United States,* Slip Op. 93–243, at 7–8 (Dec. 22, 1993) (finding no jurisdiction where Commerce's time-table for decision-making did not make available remedies inadequate).

Not only does § 1581(c) require the antidumping order to have already issued, as it has not here, *see* 19 U.S.C. § 1516a(a)(2) (1988), but also court decisions rendered pursuant to § 1581(c) do not change deposit rates until the final court decision is issued. *See* 19 U.S.C. § 1516a(e); *NTN Bearing Corp. v. United States,* 892 F.2d 1004, 1006 (Fed. Cir. 1989) (finding partial summary judgment not a final court decision for purposes of challenging deposit of estimated dumping duties). The final appellate court decision may not enter for years, long after goods have been sold and entered, and duties deposited.[2] Only extraordinary injunctive relief under § 1581(i) reinstating the agency's

---

[1] A temporary restraining order preventing the collection of deposits has been vacated. CBCC also seeks to prevent the International Trade Administration ("ITA") from issuing an antidumping duty order based on the amended final determination.

[2] Decisions such as *Inland Steel Bar Co. v. United States,* Slip Op. 94–5, at 4–5 (Jan. 12, 1994), and *Consolidated Int'l Automotive, Inc. v. United States,* Slip Op. 92–54, at 2–4 (Apr. 8, 1992), which discuss deposit rate changes as a result of voluntary remand requests by Commerce, do not apply here.

original determination could prevent irreparable harm that might result from a wholly illegal deposit rate.

One of the difficulties of applying the "manifestly inadequate" gloss on § 1581(i) jurisdiction to a claim for which § 1581(c) remedies might be available in the distant future is that it invites discussion of the merits of the claim in the context of jurisdiction, a somewhat circular and unusual procedure.[3] In any case, the court doubts that there would be any question of either relief or jurisdiction if CBCC established that Commerce exceeded its authority in amending its final determination, thereby imposing an erroneous and hugely inflated deposit rate that would soon cripple CBCC's business to the point of bankruptcy. CBCC's claim differs only by degree. Thus, the court will assume it does not lack subject matter jurisdiction for purposes of resolving the pending motion.

One further issue is whether the court should decline to exercise its jurisdiction because of CBCC's failure to raise this issue before the agency. There is a factual dispute as to whether CBCC did raise the issue, and whether it was raised in the proper manner. Rather than taking testimony and receiving further briefing on this issue, the court will set this issue aside because injunctive relief will not be granted in any case.

## INJUNCTIVE RELIEF

At the outset, CBCC has made an inadequate showing of irreparable harm. CBCC alleges that the illegally imposed dumping rate is so high that it will be unable to make sales in the United States. No hard evidence was submitted to the court indicating what specific effect loss of such sales would have upon CBCC. Assuming that prevention of serious economic harm resulting from unlawful acts is among the things Congress intended when it gave this court equitable jurisdiction, CBCC has not made such a showing.

Furthermore, the court declines to afford CBCC further opportunity to remedy the lack of evidence on irreparable harm because the other prerequisites for injunctive relief are not met. The court does not perceive a likelihood of success on the merits. Commerce is permitted by 19 U.S.C. § 1673d(e) (1988) to correct unintentional ministerial errors in a final determination.[4] According to Commerce, in attempting to determine if home market sales were below cost of production, it erred in its original final determination by accepting a gross home market

---

[3] Only one section of the court's jurisdictional statute, 28 U.S.C. § 1581(h) (1988), expressly requires a finding of irreparable harm as a prerequisite to jurisdiction.

[4] 19 U.S.C. § 1673d(e) reads as follows:

**(e) Correction of ministerial errors**

The administering authority shall establish procedures for the correction of ministerial errors in final determinations within a reasonable time after the determinations are issued under this section. Such procedures shall ensure opportunity for interested parties to present their views regarding any such errors. As used in this subsection, the term "ministerial error" includes errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial.

19 U.S.C. § 1673d(e) (1988). The relevant regulation mirrors the statutory language. *See* 19 C.F.R. § 353.28(d) (1993).

price for Brazilian silicon that reflected an upward adjustment in excess of 25 percent because of a thirty-day payment term. The Brazilian economy is hyperinflationary. *Final Det.,* at 733. Commerce inadvertently compared costs with a price adjusted to thirty days in the future. *See Amended Final Det.,* at 8598. According to Commerce, such a comparison violates the mandate of 19 U.S.C. § 1677b(b) to determine if prices "permit recovery of all costs within a reasonable period of time." 19 U.S.C. § 1677b(b)(2) (1988). Thus, Commerce states that prices calculated based on the future value of money in a hyperinflationary economy always will improperly mask below cost sales.

Apparently, it is the agency's goal to focus on contemporaneous prices and costs in a hyperinflationary economy. *See Silicon Metal from Brazil,* 56 Fed. Reg. 26,977, 26,979 (Dep't Comm. 1991) (final determ. of LTFV sales); *Tubeless Steel Disc Wheels from Brazil,* 53 Fed. Reg. 34,566, 34,566 (Dep't Comm. 1988) (amended final determ. of LTFV sales & amended final antidumping duty order); *Porcelain-on-Steel Cooking Ware from Mexico,* 55 Fed. Reg. 21,061, 21,065 (Dep't Comm. 1990) (final admin. results). From Commerce's point of view it made an error, not resulting from ill-considered judgment or wayward discretion, but from oversight.[5] It seems to the court unlikely that CBCC will prevail in its views that correction of such an error is outside the purview of an acceptably broad construction of § 1673d(e).[6]

To complete the consideration of the four factors for injunctive relief, hardships do not balance in CBCC's favor, as defendant-intervenors have been found to be injured by CBCC's imports and CBCC has not made a strong showing of harm. The public interest does not merit injunctive relief, which is in every case extraordinary, and is not warranted by fact or law in this action.

Accordingly, CBCC's motion for preliminary relief is denied. The court is of a mind to dismiss this action, as its purpose is to achieve partial relief in advance of complete resolution of challenges to a final antidumping duty order, which has or will soon issue. Unless the court hears an objection within ten days, dismissal will be ordered.

---

[5] Commerce asserts it simply did not realize what it had done.

[6] The court need not reach the issue of whether CBCC must also show that it is likely correct on the merits of the margin calculation issue, as well as with regard to the alleged procedural error underlying the amended determination.