# SLIP OP. 01-114

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                          :

GOVERNMENT OF UZBEKISTAN and   :
NAVOI MINING & METALLURGICAL    :
COMBINAT,                     :   Court No. 00-08-00392
                          :

           Plaintiffs,   :
                          :

        v.                :
                          :

THE UNITED STATES,         :
                          :

           Defendant.    :
_____:

[ITA sunset review determination remanded.]


                      Dated:  August 30, 2001


     White & Case (Carolyn B. Lamm and Adams C. Lee) for plaintiff.

     Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director, Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, David R. Mason, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.


## OPINION

     **RESTANI, Judge:**  This matter is before the court on a motion for judgment on the agency record pursuant to USCIT Rule 56.2. Plaintiffs, the Government of Uzbekistan and Navoi Mining & Metallurgical Combinat (collectively "Uzbeks"), challenge the determination of the United States Department of Commerce

("Commerce" or "ITA") pursuant to 19 U.S.C. § 1675(c) (1994)[1]

("sunset review") that dumping of uranium from Uzbekistan is

likely to occur if the antidumping duty discipline is removed.[2]

_____

[1]  19 U.S.C. § 1675(c)(1) reads, in relevant part, as follows:

> Notwithstanding subsection (b) of this section and except in the case of a transition order defined in paragraph (6), 5 years after the date of publication of-
>> (A) a countervailing duty order (other than a countervailing duty order to which subparagraph (B) applies or which was issued without an affirmative determination of injury by the Commission under section 1303 of this title), an antidumping duty order, or a notice of suspension of an investigation, described in subsection (a)(1),
>
>                    * * *
>
> the administering authority and the Commission shall conduct a review to determine, in accordance with [section 1675a] of this title, whether revocation of the countervailing or antidumping duty order or termination of the investigation suspended under [section 1671c or 1673c] of this title would be likely to lead to continuation or recurrence of dumping or a countervailable subsidy (as the case may be) and of material injury.

[2]  The court has sustained the determination of the International Trade Commission ("ITC") that imports of uranium from Uzbekistan are not likely to injure the United States industry if the antidumping duty discipline is removed. See Ad Hoc Comm. of Domestic Uranium Producers v. United States, No. 00-09-00450, slip op. 01-103 (Ct. Int'l Trade Aug. 14, 2001).  A decision by either ITC or Commerce to terminate the proceedings pursuant to a sunset review will end the proceedings.  19 U.S.C. § 1675(d).  At this time a change upon appeal of that decision is still possible.  If the decision to sustain the ITC determination
                                                (continued...)

## FACTS

On December 5, 1991, Commerce initiated an antidumping duty investigation to determine whether imports of uranium from the Union of Soviet Socialist Republic ("USSR") were being or were likely to be sold in the United States at less-than-fair value ("LTFV").  Uranium from the Union of Soviet Socialist Republics, 56 Fed. Reg. 63711 (Dept' Comm. 1991).  On December 23, 1991, the U.S. International Trade Commission ("ITC" or "Commission") issued an affirmative preliminary injury determination.

On December 28, 1991, the USSR dissolved and the United States subsequently recognized the 12 newly independent States which emerged.  Commerce, nevertheless, determined to continue the investigation.  That determination was sustained.  See Techsnabexport, Ltd. v. United States, 16 CIT 420, 795 F. Supp. 428 (1992) ("Techsnabexport I"), and Techsnabexport, Ltd. v. United States, 16 CIT 855, 802 F. Supp. 469 (1992) ("Techsnabexport II").

Commerce determined that sales of uranium from six of the 12 former republics, including Uzbekistan, were made at LTFV during the period of investigation, which covered June 1, 1991 through November 30, 1991.  Uranium From Kazakhstan, Kyrgystan, Russia, Tajikistan, Ukraine and Uzbekistan; Uranium from Armenia,

---

² (...continued)
becomes conclusively final, this dispute will be moot.

<u>Azerbaijan, Byelarus, Georgia, Moldova and Turkmenistan</u>, 57 Fed. Reg. 23,380, 23,380, 23,382 (Dep't Comm. 1992) ("<u>Preliminary Determination</u>").  Because it found that the respondents failed to provide adequate information in a timely manner, Commerce based its preliminary LTFV calculations upon the best information otherwise available ("BIA"), which was largely petition data and which resulted in a cash deposit rate equal to 115.82 percent for all relevant entries of uranium.  <u>Id.</u> at 23,382, 23,384.

The investigation of uranium from the countries found to be selling at LTFV was suspended in October of 1992 because those countries entered into agreements to restrict the volume of direct or indirect exports to the United States.[3]  There is no allegation that any interested party sought the continuance of the investigation after notice of suspension as provided in 19 U.S.C. § 1673c(g), or sought an administrative review of the suspension or of the dumping margin as provided in 19 U.S.C. § 1675(a), or a changed circumstances review as provided in 19 U.S.C. § 1675(b).

On August 2, 1999, Commerce initiated a sunset review of the suspension agreement on uranium from Uzbekistan.  <u>Initiation of Five-Year ("Sunset") Reviews</u>, 64 Fed. Reg. 41,915, 41,915 (Dep't

---

[3]  <u>See</u> <u>Uranium from Kazakhstan, Kyrgyzstan, Russia, Tajikistan, Ukraine, and Uzbekistan</u>, 57 Fed Reg. 49,220, 49,255-61 (Dep't Comm. 1992) [hereinafter "<u>Uzbek Suspension Agreement</u>"]. Subsequent amendments to the agreements are not relevant here.

Comm. 1999).  In their response to the initiation of the review, plaintiffs contended, among other things, that procedural defects in the original investigations prevented their full participation and denied that subject imports from Uzbekistan were ever dumped in the United States; that the sunset determination must be based upon country-specific information for Uzbekistan; and that Commerce must terminate the suspended investigation because there was no substantial evidence to support a positive likelihood determination with respect to Uzbekistan.  In plaintiffs' view, there also has been no dumping since entry into the suspension agreement because sales have been made pursuant to long-term contracts in which the prices of sales to the United States are set above comparable U.S. market prices; and Uzbekistan has no economic incentive to sell at below U.S. market prices. Plaintiffs also contended that Commerce should find good cause under 19 U.S.C. § 1675a(c) to consider factors other than the existing margin and the volume of merchandise before and after the suspension agreement, and that the Department should allow them to submit country-specific data.[4]

---

[4]  19 U.S.C. § 1675a(c) reads in relevant part as follows:

(1) In general

In a review conducted under [section 1675(c)] of this title, the administering authority shall determine whether revocation of an antidumping duty order or

                                                          (continued...)

On February 18, 2000, Commerce issued <u>Uranium from</u>

<u>Uzbekistan</u>, 65 Fed. Reg. 10,471 (Dep't Comm. 2000) (prelim.

sunset determ.) [hereinafter "<u>Preliminary Results</u>"].  The

<u>Preliminary Results</u> adopted and incorporated an <u>Issues and</u>

<u>Decision Memorandum for the Sunset Review of Uranium from</u>

---

[4](...continued)
termination of a suspended investigation under [section
1673c] of this title would be likely to lead to
continuation or recurrence of sales of the subject
merchandise at less than fair value.  The administering
authority shall consider–

(A) the weighted average dumping margins determined in
the investigation and subsequent reviews, and

(B) the volume of imports of the subject merchandise
for the period before and the period after the issuance
of the antidumping duty order or acceptance of the
suspension agreement.

(2) Consideration of other factors

If good cause is shown, the administering authority
shall consider such other price, cost, market, or
economic factors as it deems relevant.

(3)  Magnitude of the margin of dumping

The administering authority shall provide to the
Commission the magnitude of the margin of dumping that
is likely to prevail if the order is revoked or the
suspended investigation is terminated.  The
administering authority shall normally choose a margin
that was determined under [section 1673d] of this title
or under [ section 1675(a) or (b)(1)] of this title.

19 U.S.C. §§ 1673d, 1675(a), and 1675(b)(1) are, respectively,
final determinations, periodic review determinations and changed
circumstances review determinations.

Uzbekistan (Feb. 28, 2000), P.R. Doc. 1248, Pl.'s App., Tab 4. In response, plaintiffs submitted a case and rebuttal brief that again complained about the procedural irregularities in the original investigation and asserted that Commerce erred in the Preliminary Results.  Uzbeks Case Brief (Apr. 10, 2000), C.R. Doc. 1270, Pl.'s App., Tab 10; Uzbeks Rebuttal Brief (Apr. 18, 2000), P.R. Doc. 1281, Pl.'s App., Tab 11.

On July 5, 2000, Commerce rejected plaintiffs' arguments in Uranium from Uzbekistan, 65 Fed. Reg. 41,441 (Dep't Comm. 2000) (final sunset determ.) [hereinafter "Final Results"].  The Final Results adopted and incorporated an Issues and Decision Memorandum for the Sunset Review of Uranium from Uzbekistan (June 27, 2000), P.R. Doc. 1288, Pl.'s App., Tab 2.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). In reviewing final determinations in antidumping duty investigations and reviews, the court will hold unlawful those agency determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

This case is <u>sui generis</u>.  It involves the issue of what procedures are to be followed when an antidumping case is filed against one country and that country dissolves into numerous others before the proceedings are concluded.

In earlier litigation, the court permitted the investigation of uranium imports from the former Soviet republic to continue even though the proceedings were commenced against the Soviet Union and certain deficiencies in responses were attributable to the break up of the Soviet Union.  It was the court's understanding that the individual exporting countries or concerns would be permitted to submit their own data before adverse consequences ensued or would receive appropriate consideration or adjustment due to lack of control from the outset of the proceedings.  <u>Techsnabexport II</u>, 802 F. Supp. at 473.  Commerce has done little to adapt its procedures to fit these unique circumstances and does not attempt to defend its actions on the basis that the preliminary margin is actually reflective of dumping at any time by the Uzbeks.  Rather, defendant attempts to support its decision by claiming that the Uzbeks are technically barred from raising their arguments.

Commerce argues that 19 U.S.C. § 1675(c)(3) permits it to assume that there was dumping even though the proceedings were suspended, and to adopt the preliminary BIA margin for purposes

of its analysis and in order to provide a margin to the ITC. Commerce seeks to support its conclusion by noting that the agency could not rely on the margins specified in § 1675a(c)(3), because there is neither a final determination margin to use nor any margin available from a review of such a determination.

It may be that in a more normal case with no § 1675a(c)(3) margins available, Commerce has the discretion to assume dumping and to use any preliminary margin that is more than *de minimis*. See Policies Regarding the Conduct of Five-year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders, 63 Fed. Reg. 18,871, 18,873 (Dep't Comm. 1998) (Sunset Policy Bulletin). The court need not decide whether Commerce may use a preliminary margin without applying some safeguards or doing further investigation for purposes of an ordinary sunset review. This is not a normal case. Commerce's use in this case of the preliminary margin is not based on substantial evidence or in accordance with law. Commerce here abused its discretion when it used such discretion to deny parties fair opportunity to participate in a meaningful way.[5]

---

[5] Commerce does not address the Uzbeks' allegation that they did not receive notice of the original proceedings until after the preliminary margin was determined. It is undisputed that the Uzbeks attempted to submit their own data here and were rebuffed. Commerce simply refused to consider the possibility that a re-calculation of the dumping margin would be particularly appropriate in this case, notwithstanding the fact that the
(continued...)

It is spurious to argue that the Uzbeks had the chance to obtain an effective review under 19 U.S.C. §§ 1675(a) or (b) of the highly adverse margin and to dispute any procedural deficiencies in such reviews. In this case there was no antidumping duty order to review under §§ 1675(a) and (b) because the suspension agreement interrupted the proceedings, as it was designed to do. A section 1675 review of the suspension agreement in order to obtain a new margin calculation itself would be meaningless. Rules governing compliance with and modification of the suspension agreement are provided for within the agreement itself. See Uzbek Suspension Agreement, Arts. VIII, X, XI, and there is little purpose to focusing on the past margin arrived at in the extraordinary circumstances present in this case.[6]

Under these circumstances there is more than enough reason for Commerce to consider factors outside the norm, as it

---

[5](...continued)
Statement of Administrative Action ("SAA") contemplates that in a sunset review new margins may be calculated if extraordinary circumstances exist. SAA, accompanying H.R. Rep. No. 103-826(I), at 890-91, reprinted in 1994 U.S.C.C.A.N. 4040, 4214.

[6] Although they arise differently, changed circumstances reviews and sunset reviews share the purpose of determining whether continued unfair trade relief is necessary. See Eveready Battery Co., Inc. v. United States, Slip Op. 99-126 at 20 (CIT 1999). In Eveready, the ITC took the position that an ongoing sunset review moots a request for a changed circumstance review, which the court found to be true under the facts of that case.

acknowledged it may do under 19 U.S.C. § 1675a(c)(2), and there is insubstantial reason for proceeding in lockstep with "normal" procedures.  The Uzbeks have not had a fair opportunity to have any information considered as to whether their exports were dumped and at what level such dumping occurred, if it did occur. Section 1675(c) assumes that dumping occurred.  That assumption has not been shown to be an acceptable one in this case, particularly at the level selected.[7]

Further, Commerce does not address the Uzbeks' argument that its conduct violates the WTO Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (1994) ("Antidumping Agreement").[8]  Rather, it relies on another erroneous technical bar argument.  It relies on the prohibition of 19 U.S.C. § 3512(c)(1) against challenges to governmental action on the basis that it violates a WTO agreement.  Of course, the Uzbeks are not bringing an action under any WTO agreement, and they are free to argue that Congress would never have intended to violate an agreement it generally intended to implement, without expressly saying so.

---

[7]  Indeed, the preliminary margin is based on petition data as to the USSR and not as to Uzbekistan.

[8]  The Uzbeks assert that Articles 6.0 and 11.4 of the Antidumping Agreement together require in a sunset review that dumping margins be calculated for individual exporters or producers.

The court need not resolve whether Commerce's action violates the Antidumping Agreement and whether Congress intended to permit such violation.  Nor will the court address whether the overall decision that dumping would continue if the antidumping duty regime were not applicable is supported by substantial evidence.  As a threshold matter Commerce must support its finding of a non-*de minimis* margin before it can embark on a rational § 1675(c) analysis.  Under the unique facts of this case, it cannot simply accept the preliminary BIA margin based on the "normal" rules.  It must use the discretion given to it by the statute to address an extraordinary situation so as to make some rational decisions in a fair manner.

This matter is remanded for conduct in accordance with this opinion.  As Commerce lacks information to provide a reasonably accurate likely margin for Uzbekistan, it shall gather new data.  Because of the matter discussed in note 2, the parties shall consult and, within 11 days hereof, propose an order governing timing of the remand proceedings.

_____

Jane A. Restani
Judge

Dated:  New York, New York

This 30th day of August, 2001.

# ERRATUM

<u>Government of Uzbekistan and Navoi Mining & Metallurgical Combinat v. United States</u>, Court No. 00-08-00392, Slip Op. 01-114, dated August 30, 2001.

In the first sentence of the second paragraph on page 8, replace the word "republic" with the word "republics."