**Kenneth A. ANDERSON, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 90–11–00617.**

United States Court of
International Trade.

May 7, 1992.

Kenneth A. Anderson, Jr., pro se.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office (Mark S. Sochaczewsky), U.S. Dept. of Justice, Civil Div., Christopher Doherty, U.S. Customs Service, of counsel, for defendant.

## OPINION

RESTANI, Judge:

Pursuant to Rule 56.1 of the Rules of the United States Court of International Trade, plaintiff requests judgment upon the administrative record regarding revocation of his customs broker's license. Plaintiff's license was revoked by order of the Assistant Secretary of Treasury, acting on behalf of the Secretary of the Treasury (the "Secretary"). This revocation was based upon the Secretary's determination as recommended by an Administrative Law Judge ("ALJ"), that plaintiff violated several regulations and a statute pertaining to the conduct of customshouse brokers.

The decision of the ALJ to revoke plaintiff's license will be set aside if it is

unsupported by substantial evidence. *See* 5 U.S.C. § 706(2)(E) (1988); *Kazangian v. Brady*, 15 CIT ——, ——, Slip Op. 91–87, at 3, 1991 WL 185716 (Sept. 18, 1991); *Barnhart v. United States Treasury Dep't*, 9 CIT 287, 290, 613 F.Supp. 370, 373 (1985). Substantial evidence consists of more than a mere scintilla, and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fusco v. United States Treasury Dep't*, 12 CIT 835, 838–39, 695 F.Supp. 1189, 1193 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

## Background

Since receiving his customs broker's license in 1968, plaintiff has worked as a customs broker in the Port of Boston, Massachusetts. In a letter dated March 18, 1988, the District Director of Customs informed plaintiff that he proposed to revoke plaintiff's customs broker's license pursuant to 19 U.S.C. § 1641 and 19 C.F.R. § 111.57.[1] A Statement of Charges submitted with this letter set forth the grounds for complaint as follows: (1) plaintiff induced his clients to violate certain rules and regulations of the Customs Service, in breach of 19 U.S.C. § 1641(d)(1)(D) (Charge I); (2) plaintiff himself violated laws enforced by Customs and the rules and regulations issued under these provisions, violating 19 U.S.C. § 1641(d)(1)(C) (Charge II); and (3) plaintiff willfully and knowingly deceived and misled his clients with intent to defraud, in violation of 19 U.S.C. § 1641(d)(1)(F) (Charge III). Plain-

tiff participated in preliminary proceedings regarding these charges.

In a letter dated April 8, 1988, plaintiff stated that he had no intention of defrauding either his clients or the United States government. Plaintiff also denied the charges against him and requested a formal hearing. In a letter dated June 21, 1988, the Acting Commissioner of Customs instructed the District Director to proceed with the license revocation procedure. The District Director, in a letter dated September 2, 1988, advised plaintiff that the Commissioner of Customs had determined that his license should be revoked. Attached to this letter was the final Statement of Charges which set forth the same three charges: the charges were the same as those contained in the preliminary version.

On June 20, July 24, and July 25, 1989, an ALJ held a hearing on the proposed revocation. At the hearing, the government argued that plaintiff's license should be revoked for essentially three reasons. First, the government alleged that on twenty occasions between February 25 and August 27, 1985, plaintiff obtained release of imported merchandise on behalf of his clients, collected the duties from his clients, deposited these monies into his own bank account, and sent Customs a check written on his own account. The checks were then returned for insufficient funds, and each importer was required to pay Customs directly a second time. Second, it was alleged that in thirty instances between October 8, 1985 and May 5, 1986, plaintiff failed to submit entry summaries and duty payments after he obtained the release of mer-

---

**1.** 19 U.S.C. § 1641 provides, in part, as follows:

(d) **Disciplinary Proceedings**

(1) **General Rule**

The Secretary may impose a monetary penalty ... or revoke or suspend a license or permit of any customs broker, if it is shown that the broker—

\*   \*   \*   \*   \*   \*

(C) has violated any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision;

(D) has counseled, commanded, induced, procured, or knowingly aided or abetted the violations by any other person of any provision of any law enforced by the Customs

Service, or the rules or regulations issued under any such provision;

\*   \*   \*   \*   \*   \*

(F) has, in the course of its customs business, with intent to defraud, in any manner willfully and knowingly deceived, misled or threatened any client or prospective client.

19 U.S.C. § 1641 (1988).

19 C.F.R. § 111.57(b) provides that if the Commissioner of Customs "determines that charges will be preferred, he shall notify the district director of his determination and require that a proposed statement of charges be prepared for his review...."

19 C.F.R. § 111.57(b) (1991).

chandise and received duty payments from his clients. Third, the government contended that plaintiff overcharged his clients for overtime services performed by Customs and billed to him between October 1 and December 31, 1985.

Plaintiff, appearing *pro se,* argued that his bank had simply processed his deposits too slowly for some of the checks to clear. Plaintiff also maintained that he did not overcharge his clients for Customs' overtime, and the overtime charges appearing on the bills reflected both Customs' and his own personal overtime. Citing a temporary cash flow problem, plaintiff argued that he never intended to defraud his clients in any manner; he insisted that he was working out settlements with his clients.

Following the hearing, plaintiff retained counsel who submitted a post-hearing brief and a motion to strike certain evidence presented at the hearing. In this motion, plaintiff sought to exclude parts of Special Agent Eileen Geehan's testimony and many documents introduced by Customs. The ALJ issued a recommended decision. As an initial matter, the ALJ denied plaintiff's motion to strike the testimony and documents. Turning to the merits, the ALJ found that plaintiff had violated 19 U.S.C. § 1641(d)(1)(C) (Charge II of the Statement of Charges), by violating laws enforced by Customs and various regulations.

Specifically, the ALJ concluded that plaintiff had violated the following sections: 19 C.F.R. § 111.29 [2] by failing to exercise due diligence in making financial settlements, payments of duties, and written accountings to clients; 19 C.F.R. § 111.39 [3] by withholding information from clients; 19 C.F.R. § 111.28 [4] by failing to exercise responsible supervision and control over his Customs business; and 18 U.S.C. § 542 [5] by willfully acting or failing to act in such a manner as to deprive the government of lawful duties. The ultimate recommendation of the ALJ was revocation of plaintiff's customs broker's license. The ALJ recommended dismissal of Charges I and III because they were not proven by a preponderance of the evidence.

On October 9, 1990, the Secretary adopted the recommended decision of the ALJ and ordered revocation of plaintiff's license. The Secretary ruled that Charge II of the Statement of Charges had been sustained by a preponderance of the evidence. This appeal ensued.

## Discussion

*I. Plaintiff's motion to strike was properly denied.*

■ In his post-trial brief, incorporated by reference in these proceedings, plaintiff argued that denial of his motion to strike was an abuse of discretion. Plaintiff's objections to the evidence may be categorized as follows: (1) hearsay objections to im-

---

**2.** 19 C.F.R. § 111.29 provides, in part, as follows:

    (a) *Due diligence by broker.* Each broker shall exercise due diligence in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker. Payment of duty, tax, or other debt or obligation owing to the Government ... shall be made ... on or before the date that payment is due.... Each broker shall provide a written statement to a client accounting for funds ... received from a client where no payment has been made ... within 60 days of receipt.
19 C.F.R. § 111.29(a) (1991).

**3.** 19 C.F.R. § 111.39 provides, in part, as follows:

    (a) *Withholding or false information.* A broker shall not withhold information relative

to any Customs business from a client who is entitled to the information.
19 C.F.R. § 111.39(a) (1991).

**4.** 19 C.F.R. § 111.28 provides, in part, as follows:

    (a) *General Rule.* Every licensed broker operating as a sole proprietor and every licensed member of a partnership ... shall exercise responsible supervision and control over the transaction of the Customs business of such sole proprietorship, partnership, association, or corporation.
19 C.F.R. § 111.28(a) (1991).

**5.** 18 U.S.C. § 542 provides, in part, that "whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful merchandise ... Shall be fined for each offense not more than $5,000 or imprisoned not more than two years, or both." 18 U.S.C. § 542 (1988).

porters' invoices and cancelled checks; (2) objections to Agent Geehan's testimony as biased, and to her competence as the foundation witness for certain records and letters; and (3) hearsay objections to importers' letters regarding payments to plaintiff for duties owed and later payments to Customs as a result of plaintiff's non-payment. Plaintiff also raised objections to certain other documents, including: notices of liquidated damages and cash receipts (Customs Forms 5955A and 5104 respectively), and documents describing settlement agreements between plaintiff and certain importers.

Plaintiff conceded that the traditional rules of evidence do not apply in administrative proceedings, but argued that *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) stands for the proposition that a higher standard of admissibility than that set out in the Administrative Procedures Act ("APA") must be applied to hearsay evidence offered in a license revocation proceeding.[6]

Unless modified by agency rules, evidence is admitted in administrative proceedings in accordance with § 556(d) of the APA, which provides: "Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence." 5 U.S.C. § 556(d) (1988); *see also* 3 K. Davis, *Administrative Law Treatise* § 16.1–1 (Supp. 1989), § 16.5 (1980). The APA further provides that "relevant evidence" may be admitted in administrative hearings. 5 U.S.C. § 556(c)(3) (1988). If hearsay evidence satisfies the APA standard, agencies may consider it in light of its " 'truthfulness, reasonableness, and credibility'." *Veg–Mix, Inc. v. U.S. Dep't of Agriculture,* 832 F.2d 601, 606 (D.C.Cir.1987) (quoting *Johnson v. United States,* 628 F.2d 187, 190–91 (D.C.Cir.1980)).

This court has specifically recognized that administrative proceedings are governed by the APA, not the Federal Rules of Evidence. *See Baltimore Security Warehouse Co. v. United States,* 9 CIT 641, 645, 1985 WL 25793 (1985) (hearsay evidence admissible in proceeding to revoke bonded warehouse status); *Allen Robbins and Robbins, Inc. v. James A. Baker,* 14 CIT ——, ——, Slip Op. 90–40, at 4, 1990 WL 62640 (Apr. 27, 1990) (charges in license revocation proceeding need not be proven in accordance with Federal Rules of Evidence).

The case cited by plaintiff, *Richardson v. Perales,* does not support a contrary finding. In *Richardson,* the Supreme Court discussed factors that "assure[d] underlying reliability and probative value" of hearsay evidence.[7] 402 U.S. at 402, 91 S.Ct. at 1428. Plaintiff's reliance on *Richardson* is misguided because that case stands for the principle that admissibility of hearsay evidence in an administrative proceeding is determined by an inquiry into its reliability and probativeness, and not by strict adherence to a specific test or rule. The Supreme Court expressly found that under the APA, hearsay evidence is admissible "up to the point of relevancy." *Id.* at 410, 91 S.Ct. at 1431–32. Thus, *Richardson* clearly does not require application of the Federal Rules of Evidence in administrative proceedings.

Cases since *Richardson* have not modified this view. *See, e.g., Veg–Mix, Inc.,* 832 F.2d at 606 (hearsay evidence meeting APA standards of admissibility may be assessed according to truthfulness, reasonableness and credibility); *Calhoun v. Bailar,* 626 F.2d 145, 148–49 (9th Cir.1980) (probative value, reliability and fairness must be weighed to determine admissibility of hearsay evidence), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981); *Schaefer v. United States,* 633 F.2d 945, 952, 224 Ct.Cl. 541 (1980) (hearsay evidence admissible if sufficiently convincing to a reasonable mind and sufficient assurance of truthfulness exists).

---

**6.** The regulations regarding revocation of a broker's license do not discuss rules on evidence. *See generally* 19 C.F.R. § 111.50–111.96 (1991).

**7.** The Supreme Court listed nine factors which it believed made certain physicians' reports admissible in a disability hearing. These factors included: the value courts have previously placed on hearsay medical reports; and use of the reports in an adjudicative as opposed to an adversarial context. 402 U.S. at 403–05, 91 S.Ct. at 1428–29.

■ In the instant case, the ALJ carefully considered concerns of probative value, reliability, and fairness in determining the admissibility of the evidence. Regarding the first category of evidence, the ALJ noted that the importers' invoices and cancelled checks were business records found in files of Customs, plaintiff and importers. The ALJ correctly found them inherently reliable, and received them into evidence.[8]

■ The second category of evidence which plaintiff challenges is the testimony of Agent Geehan. Plaintiff argues Agent Geehan was biased and incompetent to testify about the nonpayment of duties. First, plaintiff had the opportunity to make a showing of bias or prejudice on cross-examination; no evidence of bias or prejudice emerged. Second, Agent Geehan testified about plaintiff's nonpayment of duties based on documents from plaintiff's and importers' files as well as a conversation with an importer. The testimony was offered to show instances of nonpayment, as well as importers' later payments of duties owed. Thus, Agent Geehan was competent to testify about the nonpayments described in attachments to the Statement of Charges. Moreover, the court notes that the ALJ did exclude portions of the testimony where Agent Geehan referred to statements of unnamed importers. Presumably, such statements were found to be unreliable.

■ The third category of evidence to which plaintiff objected was also properly admitted. The ALJ considered certain letters from importers evidencing initial nonpayment of duties, and in some cases, subsequent settlement arrangements with plaintiff. He noted their probative value, but also considered and noted plaintiff's concern that some of the letters were from parties with interests adverse to plaintiff's. This balancing is appropriate, and plaintiff has not come forward with evidence to indicate that the letters were so unreliable that they should have been discounted entirely.

■ The last category of evidence plaintiff challenged includes notices of liquidated damages, cash receipts and documents describing settlement. This evidence was also properly admitted. The documents were directly relevant to the issues of nonpayment of duties, later repayment by importers, and amounts plaintiff owed to importers.

In summary, the ALJ's decision to admit the hearsay evidence was not an abuse of discretion. The ALJ took into account the evidentiary standards described in the APA and applied a balancing test to determine the admissibility of the evidence. Moreover, it should be noted that the plaintiff himself benefitted from relaxed application of the Federal Rules of Evidence; the record indicates the ALJ gave much latitude to plaintiff during his own testimony and his cross-examination of witnesses.[9] For the foregoing reasons, the ALJ's decision to deny plaintiff's motion to strike is sustained.

## II. The decision to revoke plaintiff's license is supported by substantial evidence on the record.

■ The Secretary and the ALJ found plaintiff had committed the violations alleged in Charge II of the Statement of Charges. As stated earlier, this charge involved violations of three Customs regulations and a federal statute. In revoking plaintiff's license, the Secretary found that the twenty returned checks and the thirty instances of failure to file entry summaries or pay duties owed "clearly established that ... [plaintiff] failed to exercise due diligence and responsible supervision or control of his business." Treasury Decision Oct. 9, 1990, at 2. The Secretary also found that plaintiff failed to make proper accountings in that he received duty pay-

---

8. The court notes that plaintiff was given the opportunity at the hearing to review the documents that formed the basis of Customs' case, and stipulated to their authenticity. Although initially plaintiff did not fully understand the meaning of the stipulation, the ALJ subsequently explained it in lay terms, and plaintiff again agreed to stipulate to authenticity of the documents.

9. On several occasions, plaintiff was permitted to question witnesses and raise objections in an informal manner, as well as testify in narrative form on his own behalf.

ments from clients but did not send payments to Customs or inform clients of his failure to pay. The Secretary found that plaintiff's failure to pay Customs was willful.

A review of the record indicates substantial evidence supports the allegations in Charge II of the Statement of Charges.

The evidence regarding plaintiff's non-payment of duties in twenty instances clearly supports the ALJ's finding that plaintiff failed to pay a total of $132,444.23 in duties. The evidence included: Customs forms (CF 3461) showing release of merchandise to plaintiff; plaintiff's bills to clients stating amounts owed for Customs duties; checks from clients to plaintiff with plaintiff's endorsement on the checks; and plaintiff's checks to Customs which were returned due to insufficient funds. Additional records demonstrated that the clients in these instances were required to, and did, pay duties a second time to Customs. Plaintiff also conceded during his testimony that he had endorsed and deposited client checks into his account.

Plaintiff does not dispute the fact that he failed to pay. Instead, he testified that his failure to pay resulted from cash flow problems. This argument is unconvincing because plaintiff offered neither documentary proof of problems with his bank account nor bank statements showing delay in clearing checks through his account. The court will not act on plaintiff's request to order production of the bank records as plaintiff had opportunities in the earlier proceedings to obtain this information.

The Secretary's determination also adopted the ALJ's finding concerning thirty instances of failure to file entry summaries or pay duties in the amount of $50,881.23. The ALJ's finding was based on the following evidence: Customs forms (CF 3461) showing plaintiff obtained release of merchandise; plaintiff's bills to clients indicating amounts due; and checks from clients endorsed by plaintiff showing receipt of payment and deposit into plaintiff's account. Customs Service records reflected the fact that entry summaries in these thirty instances were never filed, and testimony by Agent Geehan indicated that

during a search of plaintiff's premises, she and other agents located the unfiled entry summaries in plaintiff's files.

Accordingly, the ALJ's findings of non-payment of duties in twenty instances, and failure to file entry summaries and pay duties in thirty instances, were based upon substantial evidence in the record and sufficiently supports the Secretary's determination.

### Conclusion

After a review of the record, the court concludes that the ALJ did not abuse his discretion in admitting certain documentary and testimonial evidence. The evidence was relevant and sufficiently reliable.

The court also finds that there was substantial evidence in the record to support the Secretary's determination that plaintiff committed violations set forth in Charge II of the Statement of Charges, and that plaintiff's customhouse broker's license should be revoked. Plaintiff's motion for judgment on the agency record is denied, and this action is dismissed.