Slip Op. 08 - 103

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| MIGUEL A. DELGADO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Before: MUSGRAVE, Senior Judge** |
| v. | : | |
| | : | **Court No. 06-00030** |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION AND ORDER**

[Sustaining DHS' decision to revoke the plaintiff's Customs broker's license .]

Decided: September 29, 2008

*The Mooney Law Firm* (*Neil B. Mooney*) for the plaintiff.

*Gregory G. Katsas*, Assistant Attorney General; *Barbara S. Williams*, Attorney In Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Marcella Powell*); *Ilena Pattie*, Office of the Associate Chief Counsel, United States Customs and Border Protection, of counsel, for the defendant.

This matter returns to the Court following a remand to the Secretary of the U.S. Department of Homeland Security ("the Secretary" or "DHS") pursuant to the Court's order in Slip Op. 07-177, *Delgado v. United States*, 31 CIT __, 536 F. Supp. 2d 1328 (2007). On May 15, 2008, the Secretary reissued its decision to revoke plaintiff Miguel A. Delgado's Customs broker's license on the ground that Mr. Delgado was convicted of felonies that involved importation and exportation and that arose out of the conduct of customs business. *Reissued Decision* at 2. Mr. Delgado filed objections arguing that the Secretary's decision is erroneous because the crimes for which he was convicted neither "involve[d] import or export" nor "arose out of the conduct of customs business." *Plaintiff's*

*Objections* at 1-3.  This Court has jurisdiction over this matter pursuant to Section 641(e) of the Tariff

Act of 1930, 19 U.S.C. § 1641(e)(1) and 28 U.S.C. § 1581(g)(2000).  For the reasons set forth below,

the court will sustain the Secretary's decision to revoke Mr. Delgado's license.

## I. Background

The facts of this case were extensively summarized in the court's previous opinions on this

matter and need not be fully repeated here.  *See Delgado v. United States,* 31 CIT__ , 491 F. Supp. 2d

1252 (2007) and Slip Op. 07-177.  In April 2001 Mr. Delgado was convicted on twenty-eight felony

counts stemming from his involvement in a scheme to illegally divert liquor into the commerce of the

United States without the payment of federal liquor taxes.  *See Judgment, United States v. Miguel*

*Delgado*, Ct. No. 00682 (S. Dist. Fla., Sept. 6, 2001) ("*Judgment*") R. at 165.  Evidence of record

indicates that the general scheme can be understood as thus: A co-conspirator by the name of Kumar

purchased approximately fifteen shipments of liquor from the McCormick distillery and designated

them for export so that no taxes would be due[1].  Each of the fifteen shipments was then shipped to

Mr. Delgado's care as manager at a company known as "Inversions Sula, S.A. de CV" in Honduras.

Upon arrival in Honduras, the liquor was consigned to Lancer Honduras, a brokerage company 50%

owned by Mr. Delgado.  Mr. Delgado then "sold" the liquor back to Kumar and shipped it back to

Miami, where it was stored in Mr. Delgado's bonded warehouse or Mr. Delgado's container freight

station.  Hearing Transcript ("Tr.") at 118-123.  At that point, Customs forms were then prepared that

designated the liquor for export to Venezuela; however, except for one shipment, none of the liquor

---

[1] *See* 26 U.S.C. § 5214(a)(1)(A).

was exported to Venezuela, but was instead diverted back into the United States.  *See* Tr. at 117-27; *United States v. Delgado,* 321 F.3d 1338 (11th Cir. 2003).

For his involvement in the scheme, Mr. Delgado was convicted on fourteen violations of 26 U.S.C. § 5601(a)(11) ("knowingly receiv[ing] distilled spirits knowing and having reasonable grounds to believe that any tax due on such spirits had not been paid"); thirteen violations of 26 U.S.C. § 5601(a)(12) ("knowingly removing, other than authorized by law, distilled spirits on which the tax had not been paid, from the place of storage and from an instrument of transportation"); and one count of 18 U.S.C. § 371 ("conspiracy to commit offenses against the United States.").  *Id*. The specific offenses contained in the section 371 conspiracy charge included (1) conspiring to violate 26 U.S.C. 5601(a)(11) *supra*; (2) conspiring to violate 26 U.S.C. 5601(a)(12) *supra*; and (3) conspiring to violate 26 U.S.C. § 5608(b) ("Unlawful relanding" of "distilled spirits which had been shipped for exportation and on which federal excise taxes had not been paid").  The Jury found Mr. Delgado guilty of conspiracy on all three counts.  *See Verdict Form*, *United States v. Miguel Delgado*, Ct. No. 00682 (S. Dist. Fla., Sept. 6, 2001); 26 U.S.C. §§ 5601(a)(11), (12) (2000); 18 U.S.C. § 371 (2000); 26 U.S.C. § 5608(b) (2000).  That verdict was affirmed on appeal.  *Delgado,* 321 F.3d 1338.

In March 2004, the U.S. Department of Customs and Border Protection ("Customs" or "CBP") commenced proceedings against Mr. Delgado for the possible revocation of his Customs broker's license.  Customs charged Mr. Delgado with several violations of CBP regulations, including (1) 19 C.F.R. §§ 111.53(c) and 111.32 (violating Customs law or regulation by filing false documentation); (2) 19 C.F.R. § 111.53(b) (having been convicted of a felony either involving

importation or exportation of merchandise or arising out of customs business); and (3) 19 C.F.R. § 111.53(d) (aiding and abetting violation of Customs law). *Notice and Statement of Charges,* R. at 153-54.

Mr. Delgado was afforded a formal hearing on the matter before an Administrative Law Judge ("ALJ") on May 18, 2004. *See generally,* Tr., Vols. I & II. On December 17, 2004, the ALJ issued a decision recommending license revocation. *Recommended Decision*, R. at 34. That recommendation was reviewed by the Secretary, who issued a decision revoking Mr. Delgado's license on December 3, 2005. Upon review, this court remanded the Secretary's revocation decision back to DHS on two separate occasions; the third version of that decision was reissued by the Secretary on May 15, 2008 and is now before the court.

In the May 15, 2008 decision on review, the Secretary adopted several portions of the ALJ's *Recommended Decision* and concluded that, pursuant to 19 U.S.C. § 1641(d)(1)(B)(i),(ii) and 19 C.F.R. § 111.53(b), license revocation was warranted because the felonies for which Mr. Delgado was convicted "involved importation and exportation" and "arose out of the conduct of customs business." *May 15, 2008 Reissued Decision* at 2-3.

Mr. Delgado asserts that the Secretary's findings are erroneous because pursuant to the definition of "exportation" set forth in *Swan v. Finch*, 190 U.S. 143 (1902), the liquor involved in this matter "cannot be considered imported or exported . . . ." *Plaintiff's Objections* at 1-2. Similarly, Mr. Delgado contends that Customs failed to connect his crimes to "Customs business" because, *inter alia*, "Customs own mitigation guidelines relating to the doing of 'Customs Business' without a

license" indicate that the in-bond movement of merchandise and the filing of a Customs Form 7512 are not considered to be Customs business. *Plaintiff's Objections* at 3.

## II. Standard of Review

In accordance with 5 U.S.C. § 706(2)(A), the court reviews the Secretary's revocation decision to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See also Barnhart v. U.S. Treasury Dep't,* 9 CIT 287, 290 613 F. Supp. 370, 373 (1985) (finding that the court need only "assure itself the decision was rational and based on consideration of relevant factors").

The factual findings of the Secretary must be based on substantial evidence. 19 U.S.C. § 1641(e)(3) (2000). *See also* 5 U.S.C. § 706(2)(E) (2000) and *Anderson v. United States*, 16 CIT 324, 324 799 F. Supp. 1198, 1199-1200 (1992). Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fusco v. United States Treasury Dep't*, 12 CIT 835, 838-39, 695 F. Supp. 1189, 1193 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Less than the weight of the evidence, the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's findings from being supported by substantial evidence. *Barnhart,* 9 CIT at 290, 613 F. Supp. at 373.

## III. Discussion

Title 19, section 1641 of the United States Code provides, in pertinent part, that the Secretary may "revoke or suspend a license or permit of any customs broker, if it is shown that the broker–

> **(B)** has been convicted at any time after the filing of an application for license under subsection (b) of this section of any felony or misdemeanor which the Secretary finds –

> **(i)** involved the importation or exportation of merchandise;
> **(ii)** arose out of the conduct of its customs business . . . .

19 U.S.C. § 1641(d)(1)(B) (2000); *see also* 19 C.F.R. § 111.53(b) (2008).

### A.  Mr. Delgado's Crimes Involved the Importation or Exportation of Merchandise

Pursuant to caselaw and Customs regulations, "exportation" is defined as "a severance of goods from the mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country."  *Swan*, 190 U.S. at 145; 19 C.F.R. § 101.1.  Mr. Delgado argues that the Secretary's finding that his crimes "involved importation or exportation" is unsupported by substantial evidence because no "exportation" occurred as a matter of law, according to the definition thereof announced in *Swan* and found in the Customs regulations.   More precisely, Delgado contends that the crime for which he was convicted did not "involve" exportation because "[p]remeditatedly shipping merchandise rapidly into and back out of bonded warehouses in Honduras certainly does not indicate an 'intention to unite the merchandise into the mass of things belonging to that country.'" *Plaintiff's Objections* at 2.  Mr. Delgado essentially argues that, although the liquor had been designated for exportation and then shipped out of the country, no actual exportation occurred because he and his co-conspirators only wanted to give the appearance that the alcohol was exported in order to avoid paying liquor taxes; their true intent had always been to illegally divert the alcohol back into this country for illegal tax-free sales.[2]  *See* Record (R.) at 244; *Respondent's May 5,*

---

[2]  Mr. Delgado contends further that in Slip Op. 07-177, this court made a finding that "the merchandise at issue was neither imported nor exported," *Plaintiff's Objections* at 2.  As such, he argues, the crime for which he was convicted could not possibly "involve import or export."  However, nowhere in Slip Op. 07-177 did this court  make a finding that the merchandise at issue was neither imported nor exported.  The statement contained in Slip Op. 07-177 to which Mr. Delgado apparently refers is the court's observation that  "it may be true that– technically speaking–
(continued...)

*2004 Reply to Agency's Response* at 2.  Mr. Delgado's argument is flawed for two reasons.

First, the argument ignores that Mr. Delgado was found guilty of a conspiracy to violate the "unlawful relanding" statute, which, for the record, necessarily means that a jury had found, beyond a reasonable doubt, that Mr. Delgado had "knowingly relanded or received within the jurisdiction of the United States distilled spirits which had been shipped *for exportation*."  26 U.S.C. § 5608(b) (emphasis added).  Further, by statute, merchandise that is "relanded" is considered to have been "*imported*":

> **§ 544 Relanding of goods**[3]
>
> If any merchandise entered or withdrawn for exportation without payment of the duties thereon, or with intent to obtain a drawback of the duties paid, or of any other allowances given by law on the exportation thereof, is relanded at any place in the United States without entry having been made, *such merchandise shall be considered as having been imported into the United States contrary to law*, and each person concerned shall be fined under this title or imprisoned not more than two years, or both; and such merchandise shall be forfeited.
>
>  . . . .

18 U.S.C. § 544 (2000) (emphasis added).

---

[2](...continued)
the liquor itself was not imported or exported . . . ."  Slip Op. 07-177 at 20.  That statement does not constitute a finding of the court; stating that something that "may be true" necessarily implies that it also may *not* be true.  The court's statement reflects the opinion that such a finding was unnecessary to decide the issue.  Furthermore, such a determination would constitute a finding of fact, which this court may not make when sitting in an appellate status.

[3] Formerly 19 U.S.C. § 1589.

Second, as this action demonstrates, the Secretary interprets "involved" in section 1641(d)(1)(B) to mean "closely related to" and not as "include." *See also "Customs Regulations Amendments Relating to Customs Brokers; Correction,"* 51 Fed. Reg. at 32209 (discussing CBP's penalty guidelines and stating that, pursuant to § 1641(d)(1)(B), the "unlawful conduct" underpinning the crime for which a broker is convicted "must *relate to . . .* [i]mportation or exportation of merchandise") (emphasis added). The court cannot conclude that the Secretary's interpretation is unreasonable. *See Webster's Third New International Dictionary* 1191 (1993) (defining "involve" to mean "to relate closely" as well as to "contain" or "include"). The Secretary's interpretation is therefore to be accorded deference. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). In other words, actual importation or exportation is not a precondition for finding whether a crime "involved" importation or exportation, and substantial evidence of record supports the Secretary's finding. Inspector Cox and special agent O'Keefe testified that the alcohol was designated for exportation and shipped out of the country; that the alcohol was reimported into the United States under the direct control of Mr. Delgado; that the alcohol was then entered into Mr. Delgado's bonded warehouse and again designated for export; and that one shipment of alcohol was exported to Venezuela but the remaining shipments were instead diverted illegally into the commerce of the United States. In essence, the Secretary could reasonably conclude from the record that Mr. Delgado and his co-conspirators used importation and exportation[4] or the appearance thereof to

---

[4] It appears undisputed that one shipment of liquor was not diverted, but instead exported to Venezuela as indicated on Customs form 7512. Tr. at 124. Because that exportation was arguably part of the conspirators' "shell game" to prevent detection of the scheme by law enforcement, that valid exportation could reasonably be considered a part of the overall diversion scheme.

create confusion and disguise the ultimate destination of the liquor, which was illegal reimportation into the commerce of the United States.

### B. Mr. Delgado's Crimes Arose Out of the Conduct of Customs Business

Pursuant to section 1641(a)(2), "Customs business" is defined as:

> those activities involving transactions with the Customs Service concerning the entry and admissibility of merchandise, its classification and valuation, the payment of duties, taxes, or other charges assessed or collected by the Customs Service upon merchandise by reason of its importation, or the refund, rebate, or drawback thereof. It also includes the preparation of documents or forms in any format and the electronic transmission of documents, invoices, bills, or parts thereof, intended to be filed with the Customs Service in furtherance of such activities, whether or not signed or filed by the preparer, or activities relating to such preparation, but does not include the mere electronic transmission of data received for transmission to Customs.

19 U.S.C. § 1641(a)(2) (2000). The above definition of "Customs business" is very broad: Customs business not only includes "transactions with the Customs Service" it includes "activities involving transactions with the Customs Service." It not only includes "preparation of documents . . . intended to be filed with the Customs Service," but includes any "activities relating to such preparation." The standard for brokers license revocation found in section 1641(d)(1)(B) theoretically encompasses an even wider array of actions because it is not necessary that the crime for which the broker was convicted *include* the activities listed in section 1641(a)(2); it is enough that the crime "arose out of the conduct of" those activities.

Hence, in reviewing the Secretary's determination that Mr. Delgado's crimes "arose out of the conduct of its Customs business," the court must determine whether the record contains substantial evidence to show that those crimes (1) arose from any activity involving "transactions with

the Customs Service concerning the entry and admissibility of merchandise . . . [or] the payment of duties, taxes, or other charges assessed or collected by the Customs Service upon merchandise by reason of its importation"; (2) arose from the preparation of any documents, forms, invoices, bills, or parts thereof that are intended to be filed with the Customs Service in furtherance of such activities; or (3) arose from activities relating to the preparation of such documents.

The court finds that the Secretary's determination is supported by substantial evidence of record. Although there is some question as to whether the filing of Customs form 7512 qualifies as Customs business, it is unnecessary to decide that issue here because the record demonstrates that other actions undertaken in the diversion scheme do qualify as Customs business. In the *Reissued Decision*, the Secretary points to evidence of record indicating, *inter alia*, that prior to diversion into the commerce of the United States, Mr. Delgado entered or arranged for the entry of at least two of the liquor shipments into a bonded warehouse that he operated. *See* Tr. 107, 123, 127. The operation of a bonded warehouse "involves the entry and admissibility of merchandise and therefore involves '[C]ustoms business.'" *Customs Ruling Letter HQ 223845*, 1992 WL 533145 (September 11, 1992). Moreover, further evidence of record indicates that entry into a bonded warehouse requires the filing of Customs Forms 7501 and 3461, which also qualifies as "Customs business." *See* Tr. at 121-122.

Mr. Delgado argues that it was Lancer, not he, that had a permit to operate the bonded warehouse, and that any Customs business undertaken in the matter was performed by Lancer International (the company of which Mr. Delgado was president and sole owner ) using the Customs brokerage license number that was issued to Lancer International as a corporation. Because it is his personal license that is now subject to revocation, Mr. Delgado contends that it would be a

miscarriage of justice to attribute to him Customs business undertaken pursuant to Lancer's Customs

brokers license.  Mr. Delgado asserts further that the issue of reasonable supervision is now moot,

arguing that:

> [I]f Lancer voluntarily surrendered its license without ever being
> accused of a single wrongdoing many years ago, then no disciplinary
> proceedings against it can now be started. Without those proceedings
> the issue of responsible supervision is moot because there certainly can
> not now be imaginary imputations of Lancer's wrongdoing to Delgado
> in the <u>absence </u>of finding of wrongdoing by Lancer in the first place.
>
> It is plain error, circular reasoning, and misses the entire point of this
> litigation if this Court were to now agree that since Delgado is a felon
> his license should be revoked on account of things the separately
> licensed broker Lancer International did: things which Customs never
> objected to. In one fell swoop, the Agency eliminates due process,
> convicts the long-dissolved Lancer of wrongdoing without allowing it
> to hear and object to charges, and the[n] imputes those unilaterally
> declared findings to Delgado without allowing him to answer to
> charges regarding responsible control and supervision! Allowing this
> would be plain error as well.

*Plaintiff's Objections* at 3-4.

    The court cannot accept this reasoning.  Lancer has not been accused of wrongdoing; Lancer

has only been accused (by Mr. Delgado himself) of being the entity that undertook the Customs

business in this matter.  However, the fact that Mr. Delgado is held strictly responsible for the actions

of Lancer is not an "imaginary imputation."  As the Secretary points out, Mr. Delgado, as a broker

and president of Lancer, is responsible for supervision and control of his employees as a matter of

law. *Recommended Decision* at 17, n. 15.  Pursuant to 19 C.F.R. 111.28(a), "every licensed officer

of an association or corporation that is a broker must exercise responsible supervision and control

over the transaction of the customs business of . . . [the] corporation."  19 C.F.R. 111.28(a) (2008).

As a result of the duty of responsible supervision and control, Mr. Delgado is "held strictly responsible for the acts or omissions of the employee within the scope of his employment . . ." 19 C.F.R. 111.2(a)(2)(ii)(B). Accordingly, it makes no difference whether the Customs business in this matter was performed by Lancer or Mr. Delgado personally; either way, Mr. Delgado is strictly responsible for those actions.

Moreover, the record is replete with evidence from which the Secretary could reasonably conclude that Lancer acted under the direct control of Mr. Delgado. For example, evidence suggests that Mr. Delgado's primary purpose in the diversion scheme was to provide brokerage services. Tr. at 118-32, 270. The indictment before the district court indicates that Mr. Delgado's part of the relanding conspiracy (of which Mr. Delgado was found guilty) was through his company, Lancer. *See Indictment*, Agency Exh. 1-A at 4. Further evidence of record indicates that Mr. Delgado personally operated the container freight station where the liquor was received and stored, and the bonded warehouse where two of the liquor shipments were entered. R. at 72,¶ 2; R. at 73 ¶14; Tr. at 107, 127. As noted above, the fact that Mr. Delgado was operating the warehouse under a permit issued to Lancer cannot dissolve the connection between himself and the Customs business conducted there. Although Mr. Delgado testified at the administrative hearing that he had no knowledge of the liquor shipments until well after they occurred, Tr. at 176-77, that testimony is contradicted by the fact that a jury found, beyond a reasonable doubt, that he was a willing conspirator in a scheme to illegally divert alcohol, and that on fourteen different occasions he "knowingly received" distilled spirits upon which the tax had not been paid. *See* Verdict form, *Delgado*, Ct. No. 00682 (S. Dist. Fla.).

Lastly, the court observes that, if the liquor had been entered correctly into the United States instead of illegally diverted, the alcohol excise tax would have been due upon that entry, and the taxes would have been collected by the director of Customs. *See* 26 U.S.C. § 5006(d) (2000) (providing that "[d]istilled spirits smuggled or brought into the United States unlawfully shall, for purposes of this chapter, be held to be imported into the United States, and the internal revenue tax shall be due and payable at the time of such importation.") and 27 C.F.R. 27.48 (2008) (providing that "taxes payable on imported distilled spirits . . . are collected . . . and deposited as internal revenue collections by directors of [C]ustoms . . . ."). Because the object of the alcohol diversion scheme was to avoid paying the required taxes by clandestinely diverting the alcohol and "relanding" it instead of properly entering it into United States commerce, it would not be unreasonable for the Secretary to further conclude that the scheme itself was connected to the "entry and admissibility of merchandise" and "the payment of duties, taxes, or other charges assessed or collected by the Customs Service upon merchandise by reason of its importation."

The court has considered all other arguments raised by Mr. Delgado and finds them without merit.

## IV. Conclusion

Upon consideration of the foregoing, the court finds that the Secretary's decision is not arbitrary and capricious, and is supported by substantial evidence.  Accordingly the court will sustain the Secretary's May 15, 2008 reissued decision, and dismiss as moot Mr. Delgado's motion for mediation.  Judgment will be entered accordingly.

**SO ORDERED**.


　　　　　　　　　　　　　　　/S/　　R. Kenton Musgrave
　　　　　　　　　　　　R. KENTON MUSGRAVE, Senior Judge

Dated: September 29, 2008
　　　　New York, New York